HONORABLE EDWARD P. McLEAN, District Judge,
delivered the Opinion of the Court.
Defendants, William R. Spicher and Emily Spicher (Spichers), appeal from the judgment of the Eleventh Judicial District, Flathead County, granting summary judgment in favor of Plaintiff, Terry N. Trieweiler (Trieweiler). We affirm in part and reverse and remand in part.
We restate the dispositive issues as follows:
(1) Did the District Court err in finding as a matter of law that the Board of Directors appointed by the developer on July 17, 1990, was not validly appointed and had no authority to appoint members to a new Architectural Committee?
*323 (2) Did the District Court err in finding that the Architectural Committee was reasonable in its determination not to approve Spichers’ choice in roofing tile and exterior color?
In May 1989, Spichers purchased Lot 64 in the Grouse Mountain Subdivision in Whitefish, Montana, subject to a number of covenants including provisions for review by the Architectural and Environmental Control Committee (Committee) of any plans for new construction. The Committee was made up of five persons appointed by the Board of Directors of the Grouse Mountain Home Owners Association (Homeowners Association). The Committee operated under a set of Minimum Guidelines for Architectural Review in Grouse Mountain, Phase I (Guidelines), adopted in 1988 by the Homeowners Association, which set minimum requirements for new construction.
The Spichers contracted with Scott Ping (Ping), a Whitefish contractor, to construct a home on Lot 64. In August 1989, Ping and the Spichers submitted a building plan to Trieweiler, who was a member of the Committee. The Committee (Committee I) approved the plan, with the following three exceptions: (1) the proposed siding material, (2) the proposed roofing tile, and (3) the proposed exterior color. After farther efforts by Ping to gain Committee I’s approval for these three items, Spichers retained an attorney who requested an appearance before Committee I. Trieweiler replied appearance before Committee I was not necessary and Committee I would not reconsider its determinations. At this point Spichers conceded to the wishes of Committee I on the siding material but continued to attempt to negotiate with Trieweiler for approval on the Spichers’ choice of roofing tile and exterior color. In September 1989, Ping gave Committee I, through Trieweiler, samples of roofing tiles promoted as superior in quality to the tiles called for in the Guidelines. Committee I agreed to one of the samples which resembled cedar shakes. Spichers subsequently discovered the manufacturer did not recommend that specific tile for cold climates. The manufacturer did recommend the style Spichers had originally chosen. At that point Trieweiler told Ping he did not have time to deal with the problem further and was washing his hands of the entire matter. In light of Trieweiler’s statement Spichers instructed Ping to roof the house with the tile recommended by the manufacturer and to stain the home with the exterior color of their choice.
On November 15,1989, Trieweiler filed, as a property owner in the subdivision, a complaint for injunctive relief alleging Spichers were applying roofing tile in violation of the minimum requirements in the *324 Guidelines and were staining the home a gray color which had been specifically disapproved by Committee I.
On May 23, 1990, the Homeowners Association held its annual meeting and elected a new Board of Directors which appointed a new Committee (Committee II). Committee II granted Spichers an appearance before the Committee but chose not to take any action at that time. Because Committee II would not act, the original developer of the subdivision appointed a new Board of Directors on July 17, 1990. The new Board designated its own members as the new Committee (Committee III) and invited Spichers and Trieweiler to attend a meeting to resolve the controversy. Trieweiler declined to attend. Spichers did attend the meeting on July 30,1990, and Committee III approved the Spicher residence as built.
On December 21, 1990, the District Court concluded Committee III was invalidly appointed and did not have authority to approve the Spicher residence as built. As a result Spichers did not have valid Committee approval for the roofing tile and exterior color used on the home and the home was in violation of the Guidelines. In light of these findings the District Court granted summary judgment for Trieweiler, and ordered Spichers to remove and replace the roofing tile with a tile known as Spectile No. 122, to execute an agreement to replace the new roofing if it is damaged due to weather or incorrect application, and to repaint the exterior of the house. Spichers appeal.
I.
Subsequent to appeal Spichers filed with this Court a Motion to Permit Supplementation of Record on Appeal asking this Court to take into account circumstances occurring subsequent to the appeal on the issue of reasonableness of the Committee’s determinations. Rule 9(f), M.R.App.P., permits supplementation of the record on appeal when something is omitted from the record “... by error or accident or is misstated therein ...” Such is not the case here and Spichers’ motion is denied.
II.
Did the District Court err in finding as a matter of law that the Board of Directors appointed by the developer on July 17, 1990, was not validly appointed and had no authority to appoint members to a new Architectural Committee?
On May 23, 1990, the Homeowners Association held its annual meeting and elected a new Board of Directors which appointed a new *325 Committee (Committee II). Committee II granted Spichers an appearance before the Committee but chose not to take any action at that time. Because Committee II would not act, the original developer of the subdivision appointed a new Board of Directors on July 17, 1990. The new Board designated its own members as the new Committee (Committee III) and invited the Spichers and Trieweiler to attend a meeting to resolve the controversy. Trieweiler declined to attend. The Spichers did attend the meeting on July 30, 1990, and Committee III approved the Spicher residence as built.
The District Court found as a matter of law that “the Board of Directors that was appointed by the developer on July 17,1990, was not validly appointed, or in excess of the number of directors provided for, and as such, the July Board of Directors had no authority to appoint anyone, much less themselves, as members of [Committee III], Section 35-2-402(2), (3), and (4), MCA [1989].” Spichers argue the developer had the right under the Articles of Incorporation to appoint a Board of Directors. Article VII of the Articles of Incorporation provides:
The affairs of the Corporation shall be managed by a Board composed of at least five (5) directors but not more than seven (7) directors who need not be members of the Corporation. The initial Board shall be composed of five (5) members. A change in the number of directors may be made by amendment to the Bylaws of the Corporation. Until such time as ninety percent (90%) of the lots or units of present and future phases of Grouse Mountain have been sold by the Developer, the directors shall be selected by the incorporator, or his successor or assign. All directors shall be elected annually for a term of one (1) year unless otherwise provided in the Bylaws. The names and addresses of the persons who are to act in the capacity of directors until the election of their successors are:...
Article V of the Articles provides that “every person or entity who is a record owner of a fee or an undivided interest in a lot or unit” is a member of the Corporation. Article VI of the Articles provides that “[i]n all elections for directors, every member entitled to vote shall have the right to cumulate his vote and to give one candidate a number of votes equal to bis vote multiplied by the number of directors to be elected or by distributing such votes on the same principal [sic] among any number of such candidates.”
The members of the Association had the authority under the *326 Articles to elect the new Board of Directors at its annual meeting on May 23,1990. That Board had the authority under Article VIII of the Bylaws of Grouse Mountain Homeowners, Inc., to “appoint committees as deemed appropriate in carrying out its purpose.” The Architectural Review Committee was a committee that had been formed by a prior Board under the authority of that provision to review plans for new construction to enforce the Minimum Guidelines for Architectural Review in Grouse Mountain, Phase I, which had been adopted by the Association membership.
Article VII of the Articles of Incorporation provides for a one-year term for elected directors on the Board. Section 35-2- 403, MCA (1989), provides that “a director maybe removed from office pursuant to any procedure therefor provided for in the articles of incorporation.” There are no provisions in the Articles of Incorporation of Grouse Mountain Homeowners, Inc., giving the developer the authority to remove a duly-elected Board of Directors prior to the end of the one-year term of office provided for in the Articles. Since the developer did not have the authority to remove the Board to appoint a new Board, any actions taken by the new Board and Committee III which was created by the new Board are invalid and unenforceable. We hold that the District Court did not err in finding as a matter of law that the Board of Directors appointed by the developer on July 17, 1990, was not validly appointed and had no authority to appoint members to a new Architectural Committee.
III.
Did the District Court err in finding that the Architectural Committee was reasonable in its determination not to approve Spichers’ choice in roofing tile and exterior color?
Both parties cite Gosnay v. Big Sky Owners Ass’n. (1983), 205 Mont. 221, 666 P.2d 1247, in support of their legal arguments. Spichers also cite Higdem v. Whitham (1975), 167 Mont. 201, 536 P.2d 1185; Town & Country Estates Ass’n v. Slater (1987), 227 Mont. 489, 740 P.2d 668; and Hillcrest Homeowners Ass’n v. Wiley (1989), 239 Mont. 54, 778 P.2d 421. These four cases represent Montana case law on the issue of validity and enforceability of restrictive covenants. None of the Montana cases address the issue currently before the Court dealing with reasonableness of determinations of a committee empowered with the right to approve or reject building plans.
It is clear the well-established rule in most jurisdictions is that a committee’s power of approval must be governed by the applicable *327 covenants and guidelines and must be reasonably exercised. This Court cited the rule in Gosnay v. Big Sky Owners Ass’n. (1983), 205 Mont. 221, 227, 666 P.2d 1247, 1250; however, the issue of reasonable exercise of power of approval was not before the Court at that time. The Court hereby adopts this rule and applies it to the case now before the Court.
The majority of cases in other jurisdictions deal with the issue of validity and enforceability of covenants. There are few cases addressing the issue of reasonableness of the exercise of power of approval. Most of the case’s that exist merely state the reasonableness rule, followed by a conclusive statement that the committee did (or did not) reasonably exercise its power of approval, with little or no discussion or analysis of how either the trial court or the appellate court reached its conclusion. We conclude that the better reasoned cases consider the determination of whether the exercise of power to approve construction plans was reasonable or arbitrary is a factual question to be determined in light of the circumstances. LaVielle v. Seay (Ky. 1966), 412 S.W.2d 587. Also see LaBlanc v. Webster (Kan. 1972), 483 S.W.2d 647; Donoghue v. Prynnwood Corp. (Mass. 1970), 255 N.E.2d 326; Rhue v. Cheyenne Homes, Inc. (Colo. 1969), 449 P.2d 361; Otwell v. West (Ga. 1964), 137 S.E.2d 291; Bramwell v. Kuhle (1960), 183 Cal.App.2d 767, 6 Cal.Rptr. 839; Shields v. Welshire Development Co. (Del. 1958) 144 A.2d 759; Alliegro v. Home Owners of Edgewood Hills, Inc. (Del. 1956), 122 A.2d 910 (examined the evidence to determine if the facts support finding power of approval was reasonably or arbitrarily exercised).
Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.R When the facts contained in the record are considered against the background of the rule that power of approval must be reasonably exercised, we conclude there are material issues of fact. Therefore the District Court erred in finding that the Architectural Committee was reasonable in its determination not to approve Spichers’ choice in roofing tile and exterior color.
The Minimum Guidelines for Architectural Review in Grouse Mountain, Phase I, provide:
The following are minimum requirements that have been applied by the Architectural Review Committee to new construction in Grouse Mountain, Phase I.
5. Stain. If wood siding or shingles are used on the exterior *328 surface of the residence, they must be stained in a color or shade approved by the Architectural Committee. Translucent stain is permitted on redwood or cedar exteriors. However, opaque stain is required on fir exteriors.
6. Roofing. Roofing materials must be cedar shake shingles or dimensional cut Class A fire-rated asphalt- fiberglass shingles. If the latter type of shingle is used, the color is subject to approval by the Architectural Committee.
... [Emphasis in original.]
The roofing material selected by Spichers was neither a cedar shake shingle nor a dimensional cut Class A fire-rated asphalt-fiberglass shingle. Committee I originally rejected Spichers’ choices but eventually did approve one of two samples of tile presented to the Committee. Spichers subsequently discovered the approved tile was not recommended for cold climates and told their contractor to use the roofing tile that was their first choice. Spichers argue they did not violate the Guidelines because the tile they used was superior in quality. The Guidelines set forth “minimum requirements,” one of which is the “[r]oofing materials must be cedar shake shingles or dimensional cut Class Afire-rated asphalt-fiberglass shingles.” There is a material question of fact whether this requirement limits the roofing material to only those two choices or whether the minimmn requirement only sets a minimum standard for quality. This factual question must be determined by the trier of fact in light of the intent of the Association in drafting the Guidelines and in light of the fact that Committee I eventually approved a tile that was not one of those two choices. There are also factual questions whether Committee I was reasonable in approving a tile not suitable for cold climates and whether Committee I had knowledge of the unsuitability of the tile at any time during its determination whether to approve the tile. These factual questions are in dispute and are material questions of fact precluding summary judgment in this case.
Committee I specifically disapproved the gray color Spichers chose to paint the exterior of their home stating that seven out of the last ten homes built in the neighborhood had been painted with some variation of gray, including the home immediately adjacent to the Spichers’ home. Committee I did approve two shades of brown. Spichers respond that more brown homes than gray homes exist in the subdivision and therefore Committee I acted arbitrarily in its rejection of gray. The power of refusal must be exercised objectively, *329 honestly and reasonably. Donoghue v. Prynnwood Corp. (Mass. 1970), 255 N.E.2d 326, 329. A committee may not subjectively impose its whims or aesthetic tastes on lot owners. Therefore a material question of fact exists regarding the objectivity and reasonableness of the Committee’s refusal to approve the gray color preferred by Spichers.
In light of the foregoing, we find there are material questions of fact which must be determined by the jury in this case, and the District Court erred in concluding that the Architectural Committee acted reasonably in its determination not to approve Spichers’ choice in roofing tile and exterior color. We remand to the District Court for further proceedings consistent with this Opinion.
Affirmed in part; reversed and remanded in part.
HONORABLE RUSSELL K. FILLNER, District Judge, sitting in place of JUSTICE R.C. McDONOUGH, HONORABLE TED L. MIZNER, District Judge, sitting in place of JUSTICE JOHN C. HARRISON, and HONORABLE LARRY W. MORAN, District Judge, sitting in place of JUSTICE FRED J. WEBER concur.