Gregory I. McHURON and Linda
L. McHuron, Appellants
(Defendants),

v.

GRAND TETON LODGE COMPANY,
a Wyoming corporation, Appellee
(Plaintiff).

No. 93–281.

Supreme Court of Wyoming.

June 28, 1995.

Rehearing Denied July 31, 1995.

James K. Lubing, Jackson, for appellants.

Bret F. King of King & King, Jackson, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The focus of concern in this case is a restrictive covenant which required approval by a development company of "proposed building plans, specifications, exterior color or finish, building materials, plot plan * * *, landscaping plan and construction schedule" with respect to lots within the development. More precisely, the question is whether Grand Teton Lodge Company (Company), acting through an Architectural Review Committee (Committee), unreasonably withheld approval of the use of fiberglass shingles by Gregory I. McHuron and Linda L. McHuron (McHurons) on the ground their use was "not in keeping with the surrounding landscape and natural beauty of the area." Following the filing of appropriate materials in support of, and in opposition to, a motion for summary judgment presented by the Company, the district court granted a summary judgment in favor of the company. We hold the language of the restrictive covenants in issue is not ambiguous; there is no genu-

ine issue of material fact; and the Company was entitled to summary judgment as a matter of law. We affirm the Order Granting Plaintiff's Motion for Summary Judgment.

In their Brief of Appellant, the McHurons set forth these issues:

I. Did the District Court err when it held, as a matter of law that, the restrictive covenants and the subsequent decisions of the Architectural Review Committee establish an enforceable general scheme or plan with regard to building materials used by homeowners within the Grand Teton Lodge Company subdivision when the Appellant presented evidence that no such plan exists?

II. Are the covenants specific enough to allow clear interpretation when no plan or scheme is provided for by them and when they provide only that the building materials be "in keeping with the natural beauty of the surrounding environment?"

III. Did the District Court err when it held, as a matter of law, that the Architectural Review Committee had not arbitrarily or unreasonably withheld its consent to use high quality asphalt shingles when the Appellant presented evidence that it had received no reasoning behind the decision, and the Covenants require only that the building material be in keeping with the natural beauty of the surrounding landscape and enhance the value, desirability, and attractiveness of the homes subject to such covenants?

The Company, in its Brief of Appellee, does not articulate a separate statement of the issues, however, it titles the following arguments in its brief:

I. Standard of Review.

II. The Restrictive Covenants and the decisions of the Architectural Review Committee establish a general scheme or design in the Jackson Hole Golf and Tennis Club Estates.

III. The Covenants manifest the Declarant's clear intention of a general scheme or plan.

IV. The decision of the Architectural Design Committee in not allowing the Appellants to use asphalt shingles was reasonable.

V. The Affidavit of Greg McHuron is based in part on hearsay and lacks foundation and the letter of Jim Cress was not authenticated, therefore should not be considered in the Appellants' Arguments.

In May of 1975, the McHurons purchased a lot in a subdivision in Teton County called the Jackson Hole Golf and Tennis Club Estates—Second Filing. Their warranty deed stated their lot was subject to the covenants, conditions, and restrictions set forth in an instrument recorded by the Company on May 24, 1973. The document referred to is entitled "Declaration of Protective Covenants Jackson Hole Golf and Tennis Club Estates—Second Filing." The covenants are comprehensive in nature and, with respect to the issues in this case, they provide:

2. *APPROVAL OF PLANS.* No building, fence or other structure shall be erected, placed or altered on any lot * * * until the proposed building plans, specifications, exterior color or finish, *building materials,* plot plan * * *, landscaping plan and construction schedule shall have been approved in writing by Grand Teton Lodge Company * * *, its successors or assigns. Approval of plans, location and specifications may not be unreasonably withheld by Company, but refusal may be based by the company upon particularly the ground that the exterior is not in keeping with the surrounding landscape and natural beauty of the area. (Emphasis added.)

　　*　　*　　*　　*　　*　　*

24. *VARIANCES.* The Company may allow reasonable variances and adjustments of the within conditions and restrictions in order to overcome practical difficulties, and prevent unnecessary hardships in the application of regulations contained herein, provided this may be done in conformity with the intent and purposes hereof and also provided in every instance that such variance or adjustment will not be materially detrimental or injurious to other property or improvements in the neighborhood.

The Company established the Committee for the purpose of enforcing the covenants.

Almost fifteen years after they acquired their lot, the McHurons sought approval by the Committee of the building plans for a home to be constructed on their lot. After examining the proposed plans, the Committee sent a letter to the McHurons in which the plans as submitted were not approved. The Committee stated in its letter that the plans could not be approved until the McHurons submitted, among other items, a drawing showing the total height of the house to be no more than eighteen feet, and a letter requesting a variance for the roofing materials. That letter advised the McHurons they would have to present a sample of their proposed roofing materials to the Committee.

The McHurons responded to these requests in a letter in which they formally requested a "variance for the section of our proposed house that goes to 19 feet, as you have done for others in the past." The McHurons also asked permission from the Committee to install the fiberglass shingles after explaining their reasons for using them. The Committee granted the request of the McHurons for a variance on the height of the building, but denied the request for use of fiberglass shingles. The McHurons were advised they should "plan to use the standard cedar shakes used by all your neighbors when building your home."

Despite the disapproval by the Committee of the roofing material, the McHurons installed the fiberglass shingles on their home. The Committee demanded the McHurons stop installing those fiberglass shingles, and the demand letter specifically stated the Committee intended to "enforce our right to determine the architectural materials installed on all buildings on the Estates." The Committee did permit the McHurons to complete the roof with fiberglass shingles to prevent water damage to the home and, in a subsequent letter, the Committee agreed it would permit the fiberglass shingles to remain on the home if eighty percent of the homeowners in the subdivision, in a straw poll, agreed to the use of the fiberglass shingles. The results of the poll were not favorable to the McHurons.

The Company then brought this action seeking enforcement of the covenants by a mandatory injunction. The Company filed a Motion for Summary Judgment, and discovery materials, consisting primarily of affidavits, were presented in support of, and in opposition to, that motion.

The trial court held a hearing with respect to the Motion for Summary Judgment. At that hearing, the court sagaciously and prophetically remarked:

> The fact is, of course, that this Court is not going to get itself in the position where it is determining whether a particular home and materials used in the home, the landscaping or any other feature, is in keeping with the natural beauty of the area, nor fitting with the general scheme of the developers in the subdivision.

> If that were to happen, I can see great disaster, if the Court substitutes its judgment for that of the committee that was appointed to represent all of the homeowners and to represent the developer.

> The real issue here is whether or not the decision of the committee was unreasonable, the denial of Mr. McHuron's application for a so-called variance was unreasonable. That's the only issue that this Court needs to determine either today or in a subsequent trial.

> Now, what am I going to hear? What evidence concerning whether or not that denial was unreasonable? What am I going to hear differently at trial than what I read by the affidavits that are on file?

The court then entered its Order Granting Plaintiff's Motion for Summary Judgment requiring the McHurons to remove their fiberglass shingles and replace them with cedar shakes or a gravel roof. This appeal is taken from that order.

■ We agree with the trial court that the critical issue in this case is whether the decision of the Committee to disapprove the use of fiberglass shingles on the McHurons' home was unreasonable. The covenants in this case are contractual in nature and are to be interpreted in accordance with the principles of contract law. *Kindler v. Anderson,* 433 P.2d 268 (Wyo.1967). Aesthetic covenants such as these have been found to be enforceable by a majority of the courts if

their purpose and intent can be ascertained. *E.g., Rhue v. Cheyenne Homes, Inc.,* 168 Colo. 6, 449 P.2d 361 (1969); *Palmetto Dunes Resort, Div. of Greenwood Dev. Corp. v. Brown,* 287 S.C. 1, 336 S.E.2d 15 (1985).

We said in *Bowers Welding and Hotshot, Inc. v. Bromley,* 699 P.2d 299, 303 (Wyo. 1985) (citing *Dawson v. Meike,* 508 P.2d 15 (Wyo.1973)):

> A common way in which to uphold restrictive covenants is to find a general plan or scheme for the development of a tract of land. To determine this, we must look to the restrictive covenants and construe them to effectuate the intent of the parties.

The purpose and intent of the covenants at issue are gleaned from the first page of the covenants where this language is found:

> WHEREAS, the property is unusually attractive and valuable as a place of residence because of the surrounding landscape, and Declarant [the Company] executing this Declaration intends to offer said property for sale and desires to establish and impose a general plan for the improvement, development, use and occupancy of said property and each and every part thereof; all of which shall be binding on and inure to the benefit of the owners and future owners of said property in order to enhance the value, desirability, attractiveness, and to be in keeping with the surrounding area of Grand Teton National Park, as well as to subserve and promote the sale of said property: * * *.

 Summary judgment is appropriate with respect to contract cases in the absence of any ambiguity because the construction of the contract is a question of law. *See Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of Am.,* 842 P.2d 1067 (Wyo.1992). If no ambiguity is discernible from a reading of the covenants, the clear meaning is to be gleaned only from the language of the covenants, although the court may look to the situation of the parties, the subject matter, and the purpose to be served. *Jackson Hole Racquet Club Resort v. Teton Pines Ltd. Partnership,* 839 P.2d 951 (Wyo.1992). In this instance, the Declaration of Protective Covenants Jackson Hole Golf and Tennis Club Estates—Second Filing manifests an intent to establish a general scheme for the subdivision and a purpose of preserving aesthetics and property values. That scheme and purpose were to be maintained by the creation of the Committee, which was charged with making reasonable pre-approval decisions concerning all aspects of proposed construction in the subdivision. The Committee could disapprove a planned residence on the ground that it is "not in keeping with the surrounding landscape and natural beauty of the area."

The McHurons contend the quoted phrase manifests ambiguity because it furnishes no notice that roofing materials in the subdivision are limited to "natural materials," namely gravel or wood shingles. They also argue there is no specific requirement in the covenants prescribing any particular type of roofing material. The same argument could be advanced with respect to other aspects of construction materials.

The McHurons had notice of the existence of a general scheme as to approved roofing materials. In the subdivision, it was apparent only wood shake and gravel roofs had been installed. There is no evidence any roofs in the subdivision have ever been constructed with material other than the wooden shakes or gravel. The absence of any other roofing materials suffices to demonstrate the Company had construed the covenants in a way demonstrating a purpose and intent to limit subdivision roofs to natural materials in keeping with the surrounding area of Grand Teton National Park. The McHurons produced no evidence to contradict the existence of such a scheme and plan with respect to this subdivision.

The covenants are unequivocal in their requirement that **any conceivable structure must be approved in writing by the Committee.** The McHurons not only had actual notice this provision was incorporated in the covenants, but the covenants were imposed in such a way that they would run with the land and be enforceable against any owner. The McHurons' actual knowledge is manifested by their seeking permission from the Committee to use fiberglass shingles when they were told to submit a request for a

variance. The McHurons concluded they were not bound by the Committee's decision after they requested a variance, and the variance was denied. The inconsistency of the McHurons' approach is demonstrated by the fact they were granted, and took advantage of, a variance with respect to the height of their building.

■ Having concluded the covenants are enforceable according to their terms, we must address whether the actions of the Committee were reasonable. The covenants provide the Committee must act "reasonably." In analyzing the claimed issue of material fact with respect to reasonableness, we follow the approach articulated in *McKenney v. Pac. First Fed. Sav. Bank of Tacoma, Washington,* 887 P.2d 927 (Wyo.1994). That analysis leads to the conclusion that the decision of the district court finding the action of the Committee was reasonable is supported by this record. The Company produced affidavits explaining the intent underlying the adoption of the covenants; the historical application of the covenants; and the dialogue with the McHurons. Responding to that showing, the McHurons produced information as to the general desirability of fiberglass shingles; asserted the possible violation of the Uniform Building Code based upon the pitch of the roof provided in their plans in relationship to other materials; and stated their opinion that the fiberglass shingles were aesthetically appropriate.

The record is silent as to the applicability of the Uniform Building Code to the subdivision. If it were applicable, it was not disputed at the hearing on summary judgment that the approved roofing materials would violate code. The covenants, however, make it clear the company assumes no responsibility for compliance with building codes. It was the responsibility of the McHurons to submit plans that would conform to any applicable building codes and still receive the approval of the Committee as to the materials.

The record is clear that, far from allowing a broad spectrum of roofing materials, the Committee had limited roofs in the subdivision to gravel or wooden shakes. Since the Committee in the past had limited other roofs in the subdivision to either gravel or wood shakes, its decision not to permit fiberglass was in keeping with that precedent and, therefore, "reasonable." In effect, the offer of a straw ballot to justify a variance serves only as additional evidence of the attempt of the Company to proceed in a reasonable fashion with respect to the McHurons' building plans.

We find no merit in the McHurons' contention that the Company is not permitted to insist on the utilization of certain materials. The simple fact that fiberglass shingles are generally suitable and desirable for construction does not pose a genuine issue with respect to aesthetic propriety. The McHurons' opinion concerning the aesthetic aspects of the fiberglass shingles is of questionable admissibility at trial but, in any event, a disagreement between the McHurons and the Committee does not manifest a genuine issue of material fact as to the enforceability of the covenants. The discretion with respect to that determination clearly was vested in the Committee.

A contrary holding in this case would place the judicial branch of government in an untenable position. In each instance, a court would be required to determine the application of an aesthetic standard even though the application of that standard was clearly reserved to a developer according to the validly-adopted covenants. It is not the prerogative of this court or that of the district court to determine whether certain materials, such as fiberglass shingles are "in keeping with the surrounding landscape and natural beauty of the area." That determination clearly is vested in the Committee by virtue of the language of the covenants imposed by the Company. We are limited to addressing the reasonableness of the action of the Committee, and we find no issue of fact as to reasonableness in this case.

We are satisfied the district court correctly resolved this case. The Order Granting Plaintiffs' Motion for Summary Judgment is affirmed.

GOLDEN, C.J., files a dissenting opinion in which MACY, J., joins.

GOLDEN, Chief Justice, dissenting, with whom MACY, Justice, joins.

I respectfully dissent. The majority approves the committee's argument that its discretion is unlimited, its decision is final without articulated reason to a lot owner, and a lot owner is precluded from any legal recourse for an arbitrary decision. Aesthetic covenants are generally upheld, however, under a rule which offers dual protection to both parties. By resolving the reasonability issue as a question of law, the majority opinion fails to afford due process protection to a lot owner, a process other jurisdictions do find legally tenable.

Courts uphold aesthetic covenants as enforceable guarantees to a purchaser of a subdivision lot that his house will be protected against adjacent construction which will impair its value and that a general plan of construction will be followed. *Rhue v. Cheyenne Homes, Inc.*, 168 Colo. 6, 449 P.2d 361, 362 (1969). Committee approval is an accepted method of accomplishing and maintaining guarantees of value and general plan. The corollary to enforceability of a covenant requiring committee approval is protection and due process of law to a lot owner, namely, that a committee's refusal to approve plans must be reasonable and made in good faith and must not be arbitrary or capricious. *Rhue*, 449 P.2d at 363.

Whether a particular aesthetic covenant is valid and enforceable is a question of law, but better reasoned cases consider the question whether the committee was reasonable or arbitrary in exercising its power of refusal a factual question to be considered in light of the circumstances. *Trieweiler v. Spicher*, 254 Mont. 321, 838 P.2d 382, 385 (1992) (collecting cases). Such approval may not be unreasonably withheld without legal recourse on the part of the party subject to the restriction. *See La Vielle v. Seay*, 412 S.W.2d 587, 592–93 (Ky.1966).

The McHurons are contending, first, that the restriction is invalid and, second, that consent has been unreasonably withheld. Their first contention, that the aesthetic covenant was so vague as to deny due process, is properly resolved against them and found valid. The clear purpose and intent of the aesthetic covenant was to establish a general scheme and then empower a committee to preserve the subdivision against homes inharmonious with the surroundings to such an extent that property value is diminished or the general plan is violated.

The specifics of the McHurons' second contention are the committee is unreasonably rejecting a material (fiberglass shingle) without proof of diminished property value or a disturbed general plan. Generally, a refusal can be proved to be reasonable by a showing the building plans or materials will diminish the value of the subdivision, or so conflict with the architecture of other nearby homes that it causes damages to the property value of those homes, or is specifically prohibited by the covenants or the committee's own lists. *See LeBlanc v. Webster*, 483 S.W.2d 647, 650 (Mo.App.1972); *Syrian Antiochian Orthodox Archdiocese v. Palisades Associates*, 110 N.J.Super. 34, 264 A.2d 257, 262 (1970). McHurons contend none of these harms are present and the committee's refusal unreasonably denies them the use of an attractive, quality, harmonious material safer and more suitable to the surroundings.

A proper ruling by the majority would state the McHurons are entitled to legal recourse when material questions of fact exist on the issue of unreasonably withheld approval. Other jurisdictions require that a committee's power of refusal be exercised objectively, honestly and reasonably and the committee's whims or aesthetic tastes are not subjectively imposed on lot owners. *Trieweiler*, 838 P.2d at 386. Under this standard, a committee's refusal of a roofing material which does not diminish the value and general plan of the subdivision; which does not violate a specific restriction either of the covenants or the committee's lists; and which is not in conflict with the other homes so that it creates damages would be unreasonable.

McHurons presented summary judgment materials demonstrating material questions of fact exist concerning the issue of reasonableness and, in opposition, the committee only claimed that the roofing material is aesthetically unattractive because it is syn-

thetic. With the barest of assertions, the committee declared that property values would be harmed. Applying the standard articulated above, at trial the committee may very well prevail but only after proving that the variation would be unsightly, causing diminished values, or inharmonious to the extent that the general plan was disturbed. It is difficult to believe that the McHurons would not be able to counter that a fiberglass shingle designed as a cedar shake look-alike does not disturb the general plan, is not unsightly, and actually enhances property values because it is safer, fire resistant and, therefore, more suitable to a wooded area. Regardless, due process requires they be afforded a proper opportunity to present evidence of the roofing material's harmony and suitability with the surroundings. The committee's discretion is not unlimited and the reasonableness of their decision is a material question of fact which should be tried.

I would reverse and remand for a trial on the issue of reasonableness.