DA 06-0197

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 141

EASTGATE VILLAGE WATER AND SEWER
ASSOCIATION, a Montana corporation,

      Plaintiff and Appellee,

  v.

JOSEPH G. DAVIS and GLORIA J. DAVIS,
individually and as husband and wife,

      Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 2005-061
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Oliver H. Goe, Trevor L. Uffelman, Browning Kaleczyc, Berry & Hoven,
P.C., Helena, Montana

      For Appellee:

          Franck C. Crowley, Abigail J. St. Lawrence, Doney Crowley Bloomquist
Payne Uda, P.C., Helena, Montana

Submitted on Briefs:  January 10, 2007

Decided:  April 22, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Joseph and Gloria Davis (the Davises) appeal a Judgment of the District Court for the First Judicial District, Lewis and Clark County, ordering them to physically abandon the unauthorized well on their property and enjoining them from drilling any other wells until such time as the rules of the Eastgate Village Water and Sewer Association (the Association) may be changed to allow private wells. The Davises appeal. We affirm.

¶2 The Davises raise the following issues on appeal:

¶3 1. Does the Association have the power to forbid privately operated irrigation wells located within the Eastgate Village subdivision that are not connected to the Association's water system?

¶4 2. Can the Association's Bylaws be applied so broadly as to allow the Association the power to encumber the private property rights of lot owners in the subdivision?

¶5 3. Did the District Court lack subject matter jurisdiction over this case because the Association failed to exhaust available administrative remedies prior to bringing a declaratory judgment action?

¶6 4. Is the District Court's opinion an inappropriate attempt to exercise jurisdiction over a purely speculative matter?

¶7 Because we find Issue 1 to be dispositive, we do not address Issue 2. Issue 3 is without merit because the Association is a private non-profit corporation and, as such, no administrative agency has jurisdiction to resolve the applicability or enforcement of the Association's rule prohibiting private wells. There is no state regulation at issue. As to

2

Issue 4, suffice it to say that the question presented does not raise an issue of subject matter jurisdiction of the court. Rather, the issue—being framed in terms of Eastgate requesting "speculative" relief—merely presents a question of failure to state a claim under M. R. Civ. P. 12(b)(6), over which the court clearly has subject matter jurisdiction. Hence, we decline to address Issues 3 and 4 further.

## Factual and Procedural Background

¶8 Eastgate Village subdivision (Eastgate), which is located just east of East Helena, Montana, was formed in March 1978 pursuant to a Declaration of Covenants, Conditions and Restrictions (CCRs). On April 5, 1978, the Board of County Commissioners of Lewis and Clark County created Lewis and Clark County Rural Special Improvement District (RSID) 1978-1 for the purpose of financing the construction and installation of parks and streets; a water plant and distribution system; a sanitary sewer collection system; and a sewage treatment plant within Eastgate. RSID 1978-1 was created and established for 15 years and expired by its own terms in 1993.

¶9 The Association is a private non-profit corporation formed on April 18, 1978, when the Office of the Secretary of State issued a Certificate of Incorporation to the Association and determined that the Association's Articles of Incorporation (Articles), dated April 17, 1978, conformed to Montana law. The Bylaws of the Association were signed by its directors on June 1, 1978; and, on June 29, 1978, the Association entered into an agreement with Lewis and Clark County wherein the Association agreed to undertake the responsibility for the maintenance, repair and operation of the water and sewage systems within RSID 1978-1. Thus, the Association is responsible for supplying

adequate potable water to the more than 600 homes located in Eastgate and to protect the public health of the nearly 2,000 Eastgate residents using that water.

¶10    The affairs of the Association are managed by a five-member board of directors (the Board) who, according to the Bylaws, have the authority to "adopt and publish generally rules and regulations governing the use and utilization of water, the handling and disposition of sewage, and all matters necessary or incidental thereto generally relating to the maintenance, repair, preservation and operation of the sewer and water systems" in Eastgate. The Bylaws also vest in the Board the authority to "adopt reasonable rules for water use" and to police compliance with those rules, including the imposition of penalties.

¶11    The Davises admit that as residents of Eastgate, they are members of the Association. In fact, Joseph Davis is a past president of the Association.

¶12    The Helena Valley experienced a drought during the summer of 2003. In July 2003, the Association's water system had to be shut down temporarily to allow its water tank to refill. In response to that problem, the Board instituted temporary watering restrictions limiting the days Eastgate residents could water their lawns. The Board maintained that these restrictions were necessary to preserve sufficient pressure and capacity in the water system to meet the demands for drinking water, household use, and fire suppression activities.

¶13    The Davises own a double lot with an expansive lawn and other vegetation. The water shortages and watering restrictions rendered the Davises' underground sprinkler system unusable. Some Eastgate residents, including the Davises, began exploring the

4

possibility of drilling their own wells for lawn and garden irrigation purposes to offset the effects of the water shortages and to ensure that they could maintain their lawns and gardens. At its August 14, 2003 meeting, the Board decided to ban private wells in Eastgate for all purposes. This action by the Board was published in the Association's December 2003 newsletter which was delivered to all lot owners with their assessment statements.

¶14 In June 2004, the Davises contracted with Lindsay Drilling to drill a well on their property for the sole purpose of providing an additional source of water for lawn and garden irrigation. The Davises submitted form 602 "Notice of Completion of Groundwater Development" to the Department of Natural Resources and Conservation who, in turn, issued the Davises a "Certificate of Water Right" permitting the Davises to use up to 35 gallons per minute of water from their well, not to exceed 10 acre-feet per year. This water right was limited to "lawn and garden" use between April 1st and October 1st each year. Although the Davises' well is not connected to the Association's water system, the well was drilled into the same aquifer used by the Association and is only 39 feet from the hose bib on the Davises' house. The well was not constructed under applicable regulatory requirements to deliver domestic or potable water and the Davises have never provided the Association with the results of any testing of the well water to determine whether the water complies with drinking-water standards.

¶15 When the Association learned of the Davises' well, the president of the Board sent the Davises a letter demanding that the Davises abandon the well. The Davises refused. The Board responded by bringing this action in the District Court seeking a declaratory

5

judgment that the Association's rule prohibiting the construction of irrigation wells on private property in Eastgate was valid and enforceable. The Association also asked the court to require the Davises to formally abandon their well in accordance with certain guidelines established by the Department of Environmental Quality (the DEQ).

¶16 The Davises answered the complaint by denying that the Association had the authority to burden any property interests other than its own or to require the Davises to abandon their irrigation well. The Davises moved for summary judgment and the Association filed a cross-motion for summary judgment.

¶17 The District Court heard oral argument on the summary judgment motions, and on November 10, 2005, the court issued an order wherein it concluded that the Association's rule banning private wells was "valid and legal." Consequently, the court granted summary judgment in favor of the Association. Thereafter, the Association submitted a proposed judgment to which the Davises objected as being overly broad because it required the permanent destruction of their well. After oral argument, the court adopted the judgment advocated by the Association and ordered the Davises to permanently abandon their irrigation well. The Davises appealed and moved for a stay of execution of judgment pending the outcome of the appeal. The District Court granted the stay with the proviso that the portion of the judgment prohibiting the use of the well remain in effect.

**Standard of Review**

¶18 Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16 (citing M. R. Civ. P.

6

56(c)).  Our standard in reviewing a district court's summary judgment ruling is de novo. *Watkins Trust,* ¶ 16 (citing *Johnson v. Barrett,* 1999 MT 176, ¶ 9, 295 Mont. 254, ¶ 9, 983 P.2d 925, ¶ 9; *Stutzman v. Safeco Ins. Co. of America,* 284 Mont. 372, 376, 945 P.2d 32, 34 (1997)).  We use the same M. R. Civ. P. 56 criteria applied by the district court. *Watkins Trust,* ¶ 16 (citing *Johnson,* ¶ 9).  Moreover, all reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment.  *Watkins Trust,* ¶ 16 (citing *Johnson,* ¶ 8; *Schmidt v. Washington Contractors Group,* 1998 MT 194, ¶ 7, 290 Mont. 276, ¶ 7, 964 P.2d 34, ¶ 7).  If there is any doubt regarding the propriety of the summary judgment motion, it should be denied. *360 Ranch Corp. v. R & D Holding,* 278 Mont. 487, 491, 926 P.2d 260, 262 (1996) (citing *Whitehawk v. Clark,* 238 Mont. 14, 18, 776 P.2d 484, 486-87 (1989)).

¶19     In addition, we review a district court's conclusions of law to determine whether they are correct.  *Montana Pet. Tank Comp. Bd. v. Crumleys,* 2008 MT 2, ¶ 32, 341 Mont. 33, ¶ 32, 174 P.3d 948, ¶ 32 (citing *State Farm Mut. Auto. Ins. Co. v. Gibson,* 2007 MT 153, ¶ 9, 337 Mont. 509, ¶ 9, 163 P.3d 387, ¶ 9).

**Discussion**

¶20     *Does the Association have the power to forbid privately operated irrigation wells located within Eastgate that are not connected to the Association's water system?*

¶21     The Davises argued in the court below and now on appeal that an association's power over the property of residents within a subdivision must come from the restrictive covenants for that subdivision.  The Davises maintain that the CCRs in this case vest no authority in the Association over the property of lot owners in Eastgate.  They contend

7

that not only do the CCRs not prohibit private wells in Eastgate or specify that the sole source of water for residents of Eastgate is the Association's system, the CCRs do not even contemplate the existence of the Association. Moreover, the Davises maintain that, since their adoption, the CCRs have not been amended so as to prohibit privately drilled wells in Eastgate or to vest any regulatory power in the Association over lot owners in the subdivision.

¶22 The District Court rejected the Davises' repeated arguments that the failure of the CCRs to mention the Association and its Bylaws was fatal to the Board's authority to regulate the Davises' private well. Contrary to the Davises' contentions, the District Court determined that the CCRs do not have any more importance in this case than do the Articles or the Bylaws, which were all created at about the same time. The court concluded that the Davises, as members of the Association, are contractually bound by the Articles and the Bylaws. The court further concluded that because the Board's rule banning private irrigation wells was reasonably related to the Association's obligation to preserve the health, safety and financial viability of its water system, the rule was valid and legal.

¶23 As the Association noted in its brief on appeal, the Bylaws grant the Board broad powers to govern the use of water within Eastgate, including the power to adopt rules to protect and preserve the water system. When the Board exercised this power and adopted the rule prohibiting the construction and use of private wells, the Board did so to protect the public water system from the risk of cross-contamination from wells not in compliance with mandatory public health standards.

¶24 We agree with the Association's assertion in its brief on appeal that the fact that the rule prohibiting private wells affected a well that is not directly owned by the Association, does not render the rule a taking of Davises' property or otherwise make the rule unlawful. The Articles provide that "[e]very person or entity who is a record owner of a fee or undivided fee interest in any Lot within the subdivision, including contract sellers, shall be a member of the Association." As members of the Association, the Davises are in a contractual relationship with the Association and are bound by the rules adopted by the Association's Board to protect and preserve Eastgate's public water system. The rule prohibiting private wells is directly related to the protection of Eastgate's water system, thus it is within the scope of the Board's duties and powers under the Association's Bylaws.

¶25 The District Court properly relied on *Appeal of Two Crow Ranch, Inc.*, 159 Mont. 16, 494 P.2d 915 (1972), for its determination that, as members of the Association, the Davises are bound by the Articles and Bylaws of the Association and must follow the rules and regulations established by the Association's Board. In *Two Crow Ranch,* this Court held that "[o]n becoming a member of a corporation or association and subscribing to its bylaws, one thereby agrees to submit to its rules and regulations." *Two Crow Ranch*, 159 Mont. at 23, 494 P.2d at 919 (citing *King v. Farmers Electric Coop.*, 246 P.2d 1041 (N.M. 1952); *Model Land & Irrigation Co. v. Madsen*, 285 P. 1100 (Colo. 1930); *Green v. Board of Trade*, 51 N.E. 599 (Ill. 1898)).

¶26 This Court determined in *Two Crow Ranch,* that while a member of an association or corporation is entitled to all the benefits of membership, the member is also subject to the obligations of membership. *Two Crow Ranch*, 159 Mont. at 23, 494 P.2d at 919.

> It is a well established precedent that the bylaws of a corporation, together with the articles of incorporation, the statute under which it was incorporated, and the member's application, constitute a contract between the member and the corporation. When duly enacted, the bylaws are binding upon all members of the corporation or association who are presumed to know them and contract in reference to them.

*Two Crow Ranch*, 159 Mont. at 23, 494 P.2d at 919 (citing 18 Am.Jur.2d, *Corporations* § 168).

¶27 The Davises attempt to distinguish *Two Crow Ranch* from the facts in the present case by asserting that the property at issue in *Two Crow Ranch* was owned by the entity attempting to assert its authority over Two Crow Ranch while, in the present case, the Davises' property is not owned by the Association. However, the fact that a member of an association is subject to the rules of that association does not change even if the association does not own the property over which the association has asserted its authority. In *Topolski v. Helena Assoc. of Realtors, Inc.*, 2000 MT 343, ¶ 18, 303 Mont. 224, ¶ 18, 15 P.3d 414, ¶ 18, we held that by their voluntary membership in the Helena Association of Realtors, Inc., plaintiffs agreed to be bound by that association's bylaws, and as such, they were obligated to enter into arbitration with a non-member. In so holding, we reiterated our conclusion in *Two Crow Ranch* that "the relationship between a member of a nonprofit corporation and that corporation is contractual in nature" and that "[o]n becoming a member of a corporation or association and subscribing to its

10

bylaws, one thereby agrees to submit to its rules and regulations." *Topolski*, ¶ 16 (quoting *Two Crow Ranch*, 159 Mont. at 23, 494 P.2d at 919); *see e.g. Turner v. Hi-Country Homeowners Ass'n*, 910 P.2d 1223, 1225 (Utah 1996) (also citing *Two Crow Ranch*); *Sutter v. Sutter Ranching Corp.,* 14 P.3d 58, ¶ 20 (Okla. 2000) (holding that "the certificate of incorporation constitutes a contract between the corporation and its shareholders and the rules governing the interpretation of contracts applie[s] to the interpretation of a certificate of incorporation."); *Walden Inv. Group v. Pier 67, Inc.*, 627 P.2d 129, 131 (Wash. App. 1981) (holding that the articles of incorporation "represent a contract between the corporation and its shareholders and should be interpreted in accordance with accepted rules of contract construction.").

¶28     Article VII, § 1(a) of the Association's Bylaws authorizes the Board to

> adopt and publish generally rules and regulations governing the use and utilization of water, the handling and disposition of sewage, and *all matters necessary or incidental thereto* generally relating to the maintenance, repair, *preservation* and operation of the sewer and water systems owned by [RSID] 1978-1 . . . .  [Emphasis added.]

Article VII, § 1(b) of the Bylaws further grants the Board authority to "adopt reasonable rules for water use and to police and supervise the compliance therewith including the imposition of penalties appropriate for the infraction of any such rules."

¶29     The rule banning private wells in Eastgate is within the stated purpose of the Association and, as members of the Association, the Davises are bound by the rules adopted by the Association's Board.  Nevertheless, the Davises contend that the Bylaws cannot affect anything that is not physically part of the mains, pumps, or other actual equipment of Eastgate's water and wastewater systems.    Under the Davises'

11

interpretation, the Association cannot act to prevent any harm or risk of contamination to the system unless the source of the potential harm lies within the physical structures of the system. We disagree. The Bylaws extend the Board's rulemaking authority to "all matters necessary or incidental" to the use and utilization of water and handling of sewage "generally relating to the maintenance, repair, preservation, and operation of the sewer and water systems . . . ." Bylaws, Art. VII, § 1(a).

¶30    Article VII, § 1(d) of the Bylaws also provides that the Board has the power to "exercise for the Association all powers, duties and authority vested in or delegated to this Association and not reserved to the membership by other provisions of these By-Laws, the Articles of Incorporation, or the [CCRs]." Nowhere in any document pertaining to Eastgate is there reserved in the members a right to have private wells.

¶31    Furthermore, the rule prohibiting private wells in Eastgate meets the standard of reasonableness by which the validity of such rules are measured. The test of reasonableness for homeowner association-type rules was fully recited in *Trieweiler v. Spicher*, 254 Mont. 321, 838 P.2d 382 (1992), which involved a ruling by the architectural control committee of a condominium association. In *Trieweiler*, this Court found that the architectural control committee's power of approval must be governed by the applicable covenants and guidelines, and the determination of whether its ruling was reasonable or arbitrary was a factual question to be determined in light of the circumstances. *Trieweiler*, 254 Mont. at 327, 838 P.2d at 385 (citing *Gosnay v. Big Sky Owners Ass'n*, 205 Mont. 221, 227, 666 P.2d 1247, 1250 (1983)); see also *Seypar v.*

*Water and Sewer Dist. No. 363*, 1998 MT 149, 289 Mont. 263, 960 P.2d 311 (holding that a rural improvement district's sewer hookup fee was "reasonable").

¶32 As already noted in this Opinion, the Davises' well was not designed for or constructed to public drinking water standards, and the water from the well is completely untreated. The Davises drilled their well a mere 39 feet from the hose bib on the outside of their house. It would be a simple matter to connect this untreated well to Eastgate's water system by running a garden hose from the well to the hose bib on the exterior of the Davises' house. Without a backflow device, there would be nothing to prevent the well water from flowing back into the Eastgate water supply.

¶33 Article IV of the Articles in the present case provides:

> The specific purposes for which [the Association] is formed are to provide for maintenance, repair, *preservation* and operation of the assets of [RSID] 1978-1 concerning the areas of Eastgate Village . . . and to that end and effect *to promote the health, safety, and welfare* of the residents within the above-described district . . . . [Emphasis added.]

Thus, the Association is charged with the duty of protecting the public water supply for the 600 homes and more than 2000 residents that obtain their water from the Association's water system. In their brief on appeal, the Davises concede that the "Association has a right—indeed, it has the duty—to protect its water system." However, the Davises maintain that they have no intention of connecting their well with Eastgate's water system, thus there is no threat to Eastgate's water supply.

¶34 Section 75-6-102(5), MCA, provides:

> "Cross-connection" means a connection between a public water supply system and another water supply system, either public or private, or a wastewater or sewerline or other *potential* source of contamination so that a

flow of water into or contamination of the public water supply system from the other source of water or contamination *is possible*. [Emphasis added.]

Under this statute, even the possibility that the Davises' private well could be attached to the Eastgate water system poses a threat to that water system. And, separate from the public health and safety threats presented by cross-contamination, the Davises' well also poses the threat of depletion of the aquifer that the Association depends upon in part for its public water supply.

¶35 During briefing and at oral argument, the Association provided the District Court with affidavits from an array of experts, all of whom expressed the opinion that the Davises' private well posed an unacceptable risk of cross-contamination to Eastgate's water system. Robert Church is an engineer licensed in Montana. He has been a consulting engineer to the Association for the Association's water system since 1995. Church opined that the proliferation of private wells within Eastgate might affect the production capacity of the Association's own wells. He further opined that the drilling of a private irrigation well in the yard of a home within Eastgate (or any subdivision served by a public water system) posed the risk of a cross-connection with the public water supply system and that cross-connection in turn created the possibility of contamination of the drinking water system.

¶36 Gary Heggeset and Lee Wolfe, both DEQ certified public water and wastewater system operators, operate 27 public water systems in the Helena area including the Eastgate public water and wastewater systems. In their affidavits, Heggeset and Wolfe

14

echoed Church's opinions regarding the possibility of contamination of the drinking water in Eastgate from a private well.

¶37 Gary Mitchell, also a DEQ certified public water and wastewater system operator, opined that the location of an untreated well in the backyard of a residence served by a public water system presented a risk of contamination of the public water system that should not be allowed. Mitchell is currently a certified operator for Mountain Water Company which provides all the drinking water to the City of Missoula. In regard to the Davises' well, Mitchell stated:

> Even if the current owner states that the untreated well will be used only for irrigation, either the current owners or subsequent owners may decide that water pressure in the residence is too low, or water system charges are too high, and it is a simple matter of connecting a garden hose from the private well to the hose bib on the house that could contaminate the entire Eastgate water system.

¶38 Craig Jenneskens is a licensed professional engineer with a specialty in the design, construction, and operation of public water and wastewater systems. He is a resident of Eastgate and he was serving on the Board in 2004 at the time the Board voted to prohibit the installation of private wells within Eastgate. In his affidavit, Jenneskens stated:

> The prospect of having private wells located on lots served by the Eastgate system raises concerns of cross-connection between Eastgate's public water supply system and a non-regulated private well(s). If a private well supply were to become contaminated, the risk of a cross-connection could potentially result in contamination of the entire Eastgate water system . . . . In the event that the Eastgate system were to become contaminated, the responsibility and liability for any end results and for remedying the contamination would rest initially with the [Association] regardless of the source of contamination.

¶39 Eugene Pizzini, a Board member and former Chairperson of the Board, is a water quality specialist and is the Compliance Officer for the Public Water Supply Section of the DEQ. Pizzini is a resident of Eastgate and was Chairperson of the Board at the time the Board voted to prohibit the installation of private wells in Eastgate. Pizzini opined that "the existence of private wells in the yards of Eastgate residents, such as the Davises' well, raise the spectre of a cross-connection of an unapproved source to the Eastgate public water system and thereby risks contamination of the Eastgate system." He indicated that while the Board did not wish to limit the residents' use or enjoyment of their properties, the Board has a responsibility to protect and preserve the safety of the Eastgate public water system.

¶40 Pizzini also noted that the Bylaws of the Association require the Board to, among other things, see to the "preservation" of the water system which includes the long-term financial sustainability of the system. He opined that a proliferation of private wells within Eastgate could jeopardize the ability of the Association to properly fund basic activities of the Association for maintenance, operation, testing and improvements.

¶41 Based on the foregoing, we hold that the District Court was correct in determining that the Association does have the power to forbid privately operated irrigation wells located within Eastgate that are not connected to the Association's water system, and that the Board's rule prohibiting such wells was reasonable in light of the Association's duty to promote the health, safety, and welfare of Eastgate residents by preserving Eastgate's water supply.

¶42 Affirmed.

16

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JOHN WARNER