No. 03-320

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 333

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DEREK WILLIAM YARNALL,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, Cause No. DC 2001-228
The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jennifer Wendt Bordy, Angel Coil & Bartlett, Bozeman, Montana

For Respondent:

Honorable Mike McGrath, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana; Marty Lambert, Gallatin
County Attorney, Bozeman, Montana

Submitted on Briefs: October 30, 2003

Decided: November 23, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Derek William Yarnall pled guilty to one count of Mitigated Deliberate Homicide pursuant to a plea agreement, and was sentenced to the custody of the Director of the Department of Public Health and Human Services ("DPHHS") to be placed in a correctional or mental health facility for a period of forty years. He later moved to withdraw his guilty plea and have the charges against him dismissed on the grounds that a subsequent Opinion from this Court interpreted a statute applicable to his case in a way that would change the outcome of his case. The District Court denied his Motion to Withdraw Plea and Dismiss. He appeals. We affirm.

## ISSUE

¶2     Did the District Court err when it denied Yarnall's motion to withdraw his guilty plea and dismiss the charge pursuant to the provisions of § 46-14-221(2)(c), MCA (2001)?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On October 11, 2001, the State filed an Information charging Yarnall with Deliberate Homicide, for causing the death of his brother James by repeatedly striking him in the head with a metal bar. Yarnall had been conditionally released from the Montana State Hospital ("MSH") about a week before James' death.

¶4     On October 19, 2001, Yarnall's counsel moved for an evaluation to determine whether Yarnall was fit to proceed. Yarnall was transported to MSH where Dr. Joseph Rich conducted a psychiatric evaluation. On November 15, 2001, Dr. Rich opined that Yarnall was unfit to proceed. The State then requested that Dr. William Stratford evaluate Yarnall,

2

pursuant to § 46-14-204, MCA (2001). Dr. Stratford evaluated Yarnall and concluded he was fit to proceed.

¶5    After conducting a fitness hearing, the District Court concluded on January 10, 2002, that Yarnall lacked fitness to proceed. Pursuant to § 46-14-221(2)(a), MCA (2001), the District Court committed Yarnall to the custody of DPHHS for so long as the unfitness endured, and set a review hearing for March 22, 2002. The District Court also scheduled the matter for trial in April 2002.

¶6    On February 13, 2002, the District Court conducted a hearing with counsel present for both Yarnall and the State. Yarnall's counsel informed the District Court that a plea agreement had been reached, but that it could not be presented unless Yarnall regained fitness to proceed. The District Court vacated the trial date and the pretrial motions deadlines, but kept the March 22, 2002, hearing date for review of Yarnall's fitness.

¶7    On March 12, 2002, Dr. John Van Hassel, psychologist, and Dr. Virginia Hill, psychiatrist, of the forensic treatment facility at MSH, submitted a report which informed the District Court that they believed Yarnall remained unfit. At the March 22 review hearing, the State did not contest the findings in the MSH report, but requested that the court hear evidence concerning whether Yarnall would regain fitness within the reasonably foreseeable future. The District Court so inquired.

¶8    Dr. Hill testified that Yarnall's condition had "fluctuated," and that it was unknown whether he was expected to regain fitness to proceed in the reasonably foreseeable future. However, she added, she did not believe she had given Yarnall's treatment her "best effort"

3

and proposed a new treatment plan which would include more aggressive drug treatment. Dr. Hill suggested that six months of treatment would allow her to reach a point where she could accurately determine whether Yarnall would regain fitness to proceed within the reasonably foreseeable future.

¶9 The State argued that, because it was unclear whether Yarnall would become fit to proceed within the reasonably foreseeable future, the District Court should extend its order of commitment until such time as a determination could be made. Yarnall's counsel responded that she was not sure the District Court could order Yarnall to be committed for another six months under § 46-14-221(2)(c), MCA (2001), but that she was "not opposed to some extension" to see if Yarnall could regain fitness. She added that "even without the statute I would agree to three months – at least a review hearing within three months."

¶10 The court stated,

> The way I interpret [§ 46-14-221, MCA] . . . is that by the legislature saying that if it does not appear the defendant will become fit to proceed within a reasonable foreseeable future, it leaves open to the court to provide further treatment if there is an opinion that within the reasonably foreseeable future he would become fit to proceed. Otherwise that doesn't make any sense unless you interpret or read it that way and there's no time limit on it. So because if the doctor gives the opinion that he is – he will not become reasonably fit within reasonable [*sic*] foreseeable future then something has to happen but that's not the opinion here. Dr. Hill's opinion today and in this report is that it's uncertain so that's how I interpret it. . . .
>
> I don't think that there's anything here that precludes subsequent commitments under the statute if there is an opinion that within the reasonably foreseeable future he may become fit as long as that continues to be the opinion. I'm not certain about the six months. I have no problem with doing it for 90 days but then her testimony is that the treatment plan that [Dr. Hill is] proposing would take six months. . . .

4

[I]n light of that testimony . . . I would commit him to the Montana State Hospital for further treatment . . . for a period of six months but review his situation . . . within 90 days. . . .

¶11 The District Court scheduled a hearing for June 21, 2002, to review Yarnall's fitness. Due to a miscommunication with the hospital, a written report was not prepared. The court was informed that there was no significant change in Yarnall's condition, but that a written report would be transmitted to the court within two weeks.

¶12 After receiving the report, the District Court held a review hearing on August 2, 2002. Yarnall was present. Dr. Van Hassel testified via telephone that he evaluated Yarnall on July 8, 2002, and found that his condition had improved since his previous assessment. Dr. Van Hassel stated that Yarnall could be considered fit to proceed, opining that, while Yarnall still suffered from mental illness, he had the capacity to appreciate the charges against him and would be capable of assisting in his own defense.

¶13 The District Court concluded that Yarnall was fit to proceed. The State presented a Proposed Plea Agreement and Amended Information, and the District Court reviewed the documents and Yarnall's constitutional rights with Yarnall to ensure that he understood them. Yarnall pled guilty to the charge of Mitigated Deliberate Homicide, and admitted that he killed James while under extreme emotional distress. The District Court concluded that Yarnall had made a knowing and voluntary plea of guilty, and found him guilty.

¶14 The District Court held a sentencing hearing on October 10, 2002, and issued a Sentence and Judgment in which it found Yarnall guilty of the offense of Mitigated Deliberate Homicide and ordered Yarnall committed to the custody of the director of

DPHHS to be placed in an appropriate correctional or mental health facility for custody care and treatment for a period of 40 years.

¶15    On November 14, 2002, this Court decided *State v. Meeks*, 2002 MT 246, 312 Mont. 126, 58 P.3d 167, in which we held that, pursuant to § 46-14-221(2)(c), MCA (2001)[1], a district court must dismiss criminal charges against a defendant who has been found unfit to proceed if, after a 90-day review, there is no evidence to suggest that the defendant will regain fitness within the reasonably foreseeable future.

¶16    On January 24, 2003, Yarnall moved to withdraw his guilty plea and dismiss, based on our decision in *Meeks*.  The District Court heard the Motion on March 12, 2003.  On April 1, 2003, the District Court issued a Decision and Order denying Yarnall's Motion. Yarnall appeals.

---

[1]    Section 46-14-221, MCA, was amended by the legislature in 2003.  The applicable provision of the statute has some language changes and is now found at § 46-14-221(3)(a), MCA (2003).

**STANDARD OF REVIEW**

¶17 Whether the District Court failed to comply with the provisions of § 46-14-221(2)(c), MCA (2001), constitutes a matter of statutory interpretation. In such a case, we review a court's conclusions of law to determine whether its decision was correct. *State v. Meeks*, 2002 MT 246, ¶ 15, 312 Mont. 126, ¶ 15, 58 P.3d 167, ¶ 15 (citations omitted).

**DISCUSSION**

¶18 Did the District Court err when it denied Yarnall's motion to withdraw his guilty plea and dismiss the charge pursuant to the provisions of § 46-14-221(2)(c), MCA (2001)?

¶19 Yarnall argues that the charges against him should have been dismissed in March 2002, when it was uncertain whether he would regain fitness to proceed in the reasonably foreseeable future. Yarnall notes that the District Court was correct in reviewing his status within 90 days of his commitment. However, he claims, the District Court erroneously concluded that it could commit him for an additional period of time when the psychologists who evaluated him testified they were unable to determine whether he would regain fitness in the reasonably foreseeable future.

¶20 Yarnall argues that his case is factually similar to *Meeks*, in which we concluded that the trial court failed to comply with the provisions of § 46-14-221(2)(c), MCA (1999). *Meeks*, ¶ 26. He maintains, as did Meeks, that although he later regained fitness to proceed, that fact is immaterial to our consideration of whether the District Court properly applied § 46-14-221(2)(c), MCA. He further argues that, while under normal circumstances a guilty plea would have waived his right to appeal his conviction, in the situation at hand a

7

jurisdictional defect existed at the time the District Court accepted his plea. If the District Court erroneously failed to dismiss his case pursuant to § 46-14-221(2)(c), MCA, he argues, it would have lacked the jurisdiction to accept his guilty plea, and such a jurisdictional defect could not be cured by any subsequent proceedings.

¶21 The State points out that Yarnall's petition was filed more than 60 days after his judgment of conviction, and thus, his normal appeal time had run. It contends that, although Yarnall has characterized his appeal as a request for relief from a denial of his motion to withdraw his guilty plea, the real procedural posture of Yarnall's appeal is a petition seeking postconviction relief. The State argues that Yarnall is not entitled to postconviction relief because he is barred from raising in a postconviction petition that which he could have raised on direct appeal.

¶22 In its Decision and Order dated April 1, 2003, the District Court concluded that dismissal of the proceedings pursuant to § 46-14-221(2)(c), MCA, is required only when the court finds that it does not appear that a defendant will regain fitness within the reasonably foreseeable future. The District Court maintained that it could not make such a finding based on the report and testimony presented at the March 22, 2002, review hearing, and thus it was not required to dismiss the criminal charges. The District Court further pointed out that Yarnall concurred with its interpretation of § 46-14-221, MCA (2001), and that its interpretation of the statute is consistent with this Court's subsequent interpretation of the statute in *Meeks*. As the District Court explained, there was no testimony that Yarnall would

8

*not* regain fitness in the reasonably foreseeable future, and thus it was appropriate to commit him to the state hospital in order to facilitate such a determination.

¶23    Section 46-14-221(2)(c), MCA (2001), states:

> The committing court shall, within 90 days of commitment, review the defendant's fitness to proceed. If the court finds that the defendant is still unfit to proceed and that it does not appear that the defendant will become fit to proceed within the reasonably foreseeable future, the proceeding against the defendant must be dismissed, except as provided in subsection (4), and the prosecutor shall petition the court in the manner provided in chapter 20 or 21 of Title 53, whichever is appropriate, to determine the disposition of the defendant pursuant to those provisions.

¶24    We first consider the State's contention that Yarnall's appeal is properly construed as a petition for postconviction relief and is thus barred from our consideration because it attempts to raise issues which could have been raised on direct appeal. Yarnall contends that his appeal is properly before this Court as the District Court's failure to dismiss is a jurisdictional defect, which would put the District Court out of compliance with § 46-14-221(2)(c), MCA (2001), and divest it of the jurisdiction necessary for it to have accepted Yarnall's guilty plea.

¶25    In *Meeks*, the defendant, who had previously pled guilty, was first evaluated by a doctor in August 1999, and was declared unfit to proceed. *Meeks*, ¶ 6. A November 1999 evaluation gave no indication Meeks would regain fitness in the reasonably foreseeable future, nor was any evidence offered in the succeeding six months to suggest that Meeks might regain fitness. *Meeks*, ¶¶ 8-10. Nonetheless, Meeks' commitment continued until May 2000, when he was finally declared fit to proceed. *Meeks*, ¶ 12.

9

¶26    We held that, because the November 1999 evaluation not only indicated that Meeks was unfit to proceed, but also contained no specific evidence to suggest that Meeks would regain fitness in the reasonably foreseeable future, the District Court was required to dismiss the criminal charges against Meeks, pursuant to § 46-14-221(2)(c), MCA, and it was reversible error when the District Court failed to do so.    *Meeks*, ¶ 26.

¶27    Although the State in *Meeks* argued that Meeks' appeal was not properly before this Court, we noted that Meeks' claim was jurisdictional in nature, and was not waived by his guilty plea, as he alleged that the District Court failed to comply with provisions of § 46-14-221(2)(c), MCA. *Meeks*, ¶¶ 18-19.  Likewise in Yarnall's situation, if he were to prevail on his contention that the District Court erroneously failed to dismiss the charges against him after the March 22, 2002, fitness hearing, the District Court would have been without jurisdiction to accept Yarnall's guilty plea on August 2, 2002.  Thus, we conclude that Yarnall's appeal is properly before this Court.

¶28    We next consider whether the District Court erred in its application of § 46-14-221(2)(c), MCA (2001), when it denied Yarnall's Motion to Withdraw Plea and Dismiss. We note that subsequent to our decision in *Meeks*, and during the time in which this appeal has been pending, we issued our Opinion in *State v. Tison*, 2003 MT 342, 318 Mont. 465, 81 P.3d 471.

¶29    In *Tison*, we reversed the district court's refusal to dismiss the criminal charges against Tison. *Tison*, ¶ 16.  We concluded that upon expiration of the 90-day commitment period prescribed by § 46-14-221, MCA, the District Court had failed to make a finding that

10

Tison was fit to proceed, nor did it make a finding that it appeared that he would become fit to proceed within the reasonably foreseeable future. *Tison*, ¶ 15. Although we did not place great emphasis on this detail within the *Tison* Opinion, for our purposes here we note that, at the time that Tison's first 90-day commitment ran out, the court simply committed him to an additional 90-day period without making any findings at all. *Tison*, ¶ 4.

¶30 In Yarnall's case, the District Court looked to § 46-14-221(2)(c), MCA (2001), and attempted to determine what the statute required of the court. *See* ¶ 10, *above*. The District Court reviewed Yarnall's fitness to proceed within 90 days of his commitment, pursuant to § 46-14-221(2)(c), MCA (2001), and found Yarnall still unfit to proceed.

¶31 Significantly, § 46-14-221(2)(c), MCA (2001), provides that the proceedings must be dismissed "[i]f the court finds . . . that *it does not appear* that the defendant will become fit to proceed within the reasonably foreseeable future. . . ." (Emphasis added.) At the March 2002 fitness hearing, the District Court noted that uncertainty surrounded Yarnall's prognosis, but that Dr. Hill's proposed treatment plan offered the possibility that Yarnall could become fit to proceed within the reasonably foreseeable future. *See* ¶ 10, *above.* At that hearing, Yarnall's counsel, observing that the first 90-day commitment period had not yet expired, did not object to an additional commitment period, although she had reservations about the proposed six-month length.

¶32 While we do not suggest that defendants who are unfit to proceed should have their commitments re-extended indefinitely on the slim chance that future treatment may help them to regain fitness, in the case at hand, we believe that in this case the District Court

11

complied with the requirements of § 46-14-221(2)(c), MCA (2001). Yarnall's situation is readily distinguishable from that in *Tison*, in which the court extended Tison's commitment without a hearing and without making *any* findings as to Tison's prospects for becoming fit to proceed in the reasonably foreseeable future. *Tison*, ¶ 4. Likewise in *Meeks*, the District Court recommitted Meeks to MSH for further evaluation when his 90-day evaluation "contained no specific evidence to suggest that Meeks would regain fitness in the reasonably foreseeable future." *Meeks*, ¶ 26.

¶33 Here, while Dr. Hill agreed she was "fairly guarded" about the prediction that "there may be a chance" that Yarnall could regain fitness in the reasonably foreseeable future, she also stated, "I really don't believe I have given my best effort at treating Mr. Yarnall's illness. . . ." Dr. Hill stated that she had a specific treatment plan which included a more aggressive use of drug treatments. Dr. Hill testified that she hoped this new treatment plan would render Yarnall fit to proceed, and to execute this plan she requested six months of additional time. The District Court agreed to the six-month commitment but ordered a review hearing in 90 days.

¶34 While there was some question as to whether Yarnall would regain fitness in the reasonably foreseeable future at the March 2002 status hearing, testimony was presented which supported the prospect that he could regain fitness. As is its function, the District Court weighed the evidence before it and concluded that it could order an additional commitment because it was not prepared to find that "it does not appear" that Yarnall would

12

regain fitness, pursuant to § 46-14-221(2)(c), MCA (2001).  In so concluding, the District Court properly acted within the statutory directive.

## CONCLUSION

¶35     Thus, we conclude that the District Court did not err in its interpretation of  § 46-14-221(2)(c), MCA (2001).  Its denial of Yarnall's Motion to Withdraw Plea and Dismiss is affirmed.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ JOHN WARNER