DA 06-0576

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 56

FRAN YARNALL GUDMUNDSEN,
on her behalf and as representative of the
Estate of JAMES YARNALL and as guardian
and conservator for DEREK YARNALL,

Plaintiff and Appellant,

v.

STATE OF MONTANA, ex. rel, Montana State
Hospital Warm Springs, and DOES 1-5,

Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District,<br>In and For the County of Lewis and Clark, Cause No. ADV 2004-585<br>Honorable Dorothy McCarter, Presiding Judge |

COUNSEL OF RECORD:

For Appellant:

Richard J. Pyfer, Doubek & Pyfer, LLP, Helena, Montana

For Appellee:

Elizabeth S. Baker, Hughes, Kellner, Sullivan & Alke, PLLP,
Helena, Montana

Submitted on Briefs: July 3, 2007

Decided: February 24, 2009

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Derek Yarnall killed his brother, James Yarnall, six days after Derek was released from the Montana State Hospital (MSH). Fran Gudmundsen, the mother of both Derek and James, brought this action in the District Court for the First Judicial District, Lewis and Clark County, to recover damages for the wrongful death of James. The District Court granted the State's motion for summary judgment and Fran appeals. We affirm.

¶2 Fran raised the following issue on appeal: Whether the District Court erred in granting summary judgment to the State in the following respects:

(a) that § 27-1-1103, MCA, grants immunity from liability to the State;

(b) that the State cannot be held negligent *per se*, and

(c) that because James Yarnall was not a foreseeable plaintiff, the State did not owe him a duty.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On August 2, 2001, Derek was taken to St. Peter's Hospital in Helena following an emergency detention by the Bozeman Police Department. Derek suffers from schizo-affective disorder. By the time Derek was seen in the emergency room at the hospital, he was nearly catatonic. According to his psychiatric report, he had been off his medications for several months resulting in "poor self-care, inadequate nutrition, preoccupation with internal stimuli, and social isolation." The report further described Derek as extremely withdrawn, barely able to converse, and a danger to himself because he was unable to care for his own needs.

¶4     After a hearing, Derek was involuntarily committed to MSH by the Eighteenth Judicial District Court, Gallatin County, for a period not to exceed three months. In the Minute Entry for the August 2, 2001 commitment hearing, the District Court directed that Derek "be hospitalized no longer than necessary to balance his medications and for the psychiatric staff to be comfortable that he is of no danger to himself."

¶5     By September 18, 2001, Derek was compliant with his medications, was attending group programs at the hospital, and had earned a four-hour campus pass allowing him to go out unsupervised on the hospital grounds. Both Derek's psychiatrist and psychologist at MSH later testified in their depositions that, while hospitalized, Derek showed no signs of aggression or violence. He was quiet and withdrawn, but got along with other patients and never made any threats of violent behavior. Derek's psychiatrist further testified that, during psychiatric assessments, Derek always denied any thoughts of committing suicide or of harming others.

¶6     Derek was discharged from MSH on September 22, 2001, on a conditional release with South Central Montana Community Mental Health Center (South Central) providing his outpatient treatment. At the time of his release from MSH, Derek had his own apartment, regular monthly income from his Social Security disability benefits, a plan in place for continued follow-up with his medications and for care by treatment providers familiar with his history, a week's supply of medications, and a two-week prescription for his continuing medications.

¶7     While Derek was at MSH, James stayed at Derek's apartment to look after things, and, after Derek's release, James continued to stay at the apartment off and on. Fran saw

3

or spoke with Derek several times during the week following his release, and she and her husband, Gary, took Derek out to dinner one evening. At one point during that week, Derek told Fran that he didn't really want James around because James was getting "in [his] face." In the early morning hours of September 29, 2001, less than one week after Derek's release from MSH, Derek and James got into an argument during which Derek killed James by striking him with a heavy metal bar.

¶8 The State filed deliberate homicide charges against Derek in Gallatin County. He subsequently pled guilty to mitigated deliberate homicide and was sentenced to the custody of the Department of Public Health and Human Services. He was ordered to be placed in an appropriate correctional or mental health facility for custody care and treatment for a period of 40 years. Derek is currently in the custody of MSH. Following a challenge to Derek's guilty plea, this Court upheld his criminal conviction in an Opinion issued on November 23, 2004. *See State v. Yarnall*, 2004 MT 333, 324 Mont. 164, 102 P.3d 34.

¶9 On August 9, 2004, Fran filed a civil Complaint against the State on behalf of herself individually and as personal representative of James's estate, and on behalf of Derek, as his guardian and conservator. Fran alleged in her Complaint that MSH, an agency of the State, was negligent in its decision to conditionally release Derek from inpatient care; that MSH had a duty to supervise and monitor Derek during the three-month term of his commitment; and that MSH failed to properly supervise Derek on his return to the community or to put in place proper support mechanisms to monitor and treat his condition.

4

¶10 The State filed a motion for summary judgment on December 16, 2005. The District Court conducted a hearing on the motion and, after the submission of briefs by both parties, the court issued an order holding the entire matter in abeyance to give Fran an opportunity to exhaust her administrative remedies with the Montana Medical Legal Panel (the Panel).

¶11 Following the Panel hearing, Fran filed additional affidavits with the court on her behalf and a second hearing on the State's motion for summary judgment was held. On July 24, 2006, the District Court entered its Decision and Order wherein it determined that the State was entitled to judgment as a matter of law on all claims raised in Fran's Complaint. Fran appeals the District Court's Decision and Order.

## STANDARD OF REVIEW

¶12 We review a district court's summary judgment ruling de novo using the same M. R. Civ. P. 56 criteria applied by the district court. *Eastgate Village Water and Sewer v. Davis*, 2008 MT 141, ¶ 18, 343 Mont. 108, 183 P.3d 873 (citing *Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 16, 321 Mont. 432, 92 P.3d 620). Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Eastgate Village*, ¶ 18. Furthermore, all reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment. *Eastgate Village*, ¶ 18. If there is any doubt regarding the propriety of the summary judgment motion, it should be denied. *Eastgate Village*, ¶ 18 (citing *360 Ranch Corp. v. R & D Holding*, 278 Mont. 487, 491, 926 P.2d 260, 262 (1996); *Whitehawk v. Clark*, 238 Mont. 14, 18, 776 P.2d 484, 486-87 (1989)).

¶13    In addition, we review a district court's conclusions of law to determine whether they are correct. *Eastgate Village*, ¶ 19 (citing *Montana Pet. Tank Comp. Bd. v. Crumleys*, 2008 MT 2, ¶ 32, 341 Mont. 33, 174 P.3d 948; *State Farm Mut. Auto. Ins. Co. v. Gibson,* 2007 MT 153, ¶ 9, 337 Mont. 509, 163 P.3d 387).

## DISCUSSION

¶14    ***Whether the District Court erred in granting summary judgment to the State.***

¶15    In its Decision and Order granting the State's Motion for Summary Judgment, the District Court determined that the State was immune from liability, was not negligent *per se*, and did not owe James a duty. We will examine each of the court's determinations in turn.

¶16    Sovereign immunity protects governmental entities from liability for the negligent acts of their officers and employees. *Orr v. State*, 2004 MT 354, ¶ 54, 324 Mont. 391, 106 P.3d 100 (citing Barry L. Hjort, *The Passing of Sovereign Immunity in Montana: The King is Dead!* 34 Mont.L.Rev. 283 (1973)). In 1972, the Delegates to Montana's Constitutional Convention concluded that the doctrine was "an anachronism," Orr, ¶ 54, and that it "no longer has a rational justification in law," Montana Constitutional Convention, Report of the Bill of Rights Committee, Vol. II, p. 637.

¶17    The Montana Constitution does provide, however, that immunity may be established by a specific provision enacted by a supermajority of both houses of the Legislature:

> **State subject to suit.** The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a

6

person or property, *except as may be specifically provided by law by a 2/3 vote of each house of the legislature.*

Mont. Const. art. II, § 18 (emphasis added). Sections 27-1-1102 and -1103, MCA, regarding liability of mental health professionals, are two such provisions. These statutes provide, in relevant part:

> **Duty to warn of violent behavior.** A mental health professional has a duty to warn of or take reasonable precautions to provide protection from violent behavior only if the patient has communicated to the mental health professional *an actual threat of physical violence by specific means against a clearly identified or reasonably identifiable victim. . . .*

Section 27-1-1102, MCA (emphasis added).

> **Immunity from liability.** (1) No monetary liability and no cause of action may arise against any mental health professional for failing to predict, warn of, or take precautions to provide protection from a patient's threatened violent behavior *unless he has a duty to warn of violent behavior, as provided in 27-1-1102. . . .*

Section 27-1-1103, MCA (emphasis added).

¶18 Sections 27-1-1102 and -1103, MCA, were enacted in 1987 in response to cases from other jurisdictions deciding the question of whether a therapist, whose patient poses a danger of violence to others, has a duty to warn potential victims. *See* 1987 Mont. Laws, chapter 214. In one of the first such cases, the California Supreme Court ruled that once a therapist determines, or reasonably should have determined, that a patient poses a serious danger of violence to another, the therapist "bears a duty to exercise reasonable care to protect the foreseeable victim of that danger." *Tarasoff v. Regents of University of California*, 551 P.2d 334, 345-46 (Cal. 1976). The court in *Tarasoff* was unwilling to impose a blanket liability for the unpredictable conduct of patients with mental disorders,

7

but at the same time recognized that a doctor "assume[s] some responsibility for the safety, not only of the patient himself, but also of any third person whom the doctor knows to be threatened by the patient." *Tarasoff*, 551 P.2d at 344.

¶19    The California Supreme Court narrowed its holding in *Tarasoff* four years later in *Thompson v. County of Alameda*, 614 P.2d 728, 738 (Cal. 1980), wherein the court held that a therapist's duty to warn is limited to a "named or readily identifiable victim." In other words, "public entities and employees have no affirmative duty to warn of the release of an inmate with a violent history who has made *nonspecific threats of harm directed at nonspecific victims*." *Thompson*, 614 P.2d at 735 (emphasis added).

¶20    Courts following *Tarasoff's* rationale attempted to balance the interest in protecting public safety against the countervailing policies regarding treatment of the mentally ill. *See Emerich v. Philadelphia Center for Human Development, Inc.*, 720 A.2d 1032, 1039 (Pa. 1998) (recognizing the difficulty "in predicting violent behavior, the importance of confidential communications between therapist and patient, and the policy that patients be placed in the least restrictive environment").

¶21    As noted, §§ 27-1-1102 and -1103, MCA, were enacted in response to *Tarasoff* and its progeny. Section 27-1-1102, MCA, imposes a duty on mental health professionals to warn of or take reasonable precautions to provide protection from violent behavior "only if the patient has communicated to the mental health professional an actual threat of physical violence by specific means against a clearly identified or reasonably identifiable victim." Absent those circumstances, "[n]o monetary liability and no cause of action may arise against any mental health professional for failing to predict,

8

warn of, or take precautions to provide protection from a patient's threatened violent behavior . . . ." Section 27-1-1103(1), MCA.

¶22 In the case *sub judice*, the District Court determined that the State was immune from liability in this case based upon §§ 27-1-1102 and -1103, MCA. The court concluded that because the record in this case showed no evidence that Derek communicated specific threats to any specific victims, the State did not have a duty to warn of violent behavior, and was, thus, immune from liability.

¶23 Fran contends on appeal that the District Court erred in concluding that the State is immune from liability because § 27-1-1103, MCA, does not provide immunity to a health care facility such as MSH. She claims instead that immunity under this statute is limited to "mental health professionals," which, as defined in § 27-1-1101, MCA, does not include hospitals.

¶24 In 1973, the Montana Legislature enacted the Tort Claims Act and the Comprehensive State Insurance Plan (Title 2, chapter 9, parts 1 through 3, MCA). Under § 2-9-101(1), MCA, state liability attaches under the Tort Claims Act "only where a private person similarly would be liable." *Drugge v. State*, 254 Mont. 292, 294-95, 837 P.2d 405, 406 (1992). Thus, where Montana law protects private citizens from liability, it also protects the State. In this case, if a mental health professional would not be liable under the conditions indicated in the statutes, neither would the State be liable under those same conditions.

¶25 Therefore, under §§ 27-1-1102 and -1103, MCA, the State would be immune from liability in this case unless Derek communicated to his mental health professionals "an

actual threat of physical violence by specific means" against James, an issue which we determine later in this Opinion.

¶26 Fran also argues that granting immunity to the State in this case deprives her of her constitutional right to full redress under Article II, § 16 of the Montana Constitution. However, Fran presents no argument or authority in support of this position as required by M. R. App. P. 12(1)f. As a general rule, we will not consider unsupported issues or arguments since we are under no obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal. *In re Marriage of McMahon,* 2002 MT 198, ¶ 6, 311 Mont. 175, 53 P.3d 1266. Consequently, we reject this argument.

¶27 We next turn to the question of whether the exception language of § 27-1-1102, MCA, was triggered here for purposes of denying immunity from suit to the State under § 27-1-1103, MCA.

¶28 The District Court determined that because there was no evidence of recent acts of violence or aggression by Derek, the State was not negligent *per se*. The court based its conclusion on § 53-21-126(2), MCA, which provides:

> The standard of proof in a hearing held pursuant to this section is proof beyond a reasonable doubt with respect to any physical facts or evidence and clear and convincing evidence as to all other matters. However, the respondent's mental disorder must be proved to a reasonable medical certainty. *Imminent threat of self-inflicted injury or injury to others must be proved by overt acts or omissions, sufficiently recent in time as to be material and relevant as to the respondent's present condition.* [Emphasis added.]

10

¶29 Fran argues on appeal that the District Court applied the wrong statute. She contends that instead of applying § 53-21-126(2), MCA, the court should have applied § 53-21-601(2)(c), MCA, which provides:

> The mission of Montana state hospital is *to stabilize persons with severe mental illness* and to return them to the community as soon as possible if adequate community-based support services are available. [Emphasis added.]

Thus, Fran claims that under § 53-21-601(2)(c), MCA, there is a question of fact as to whether Derek was stabilized sufficiently to be released from the hospital and whether there was adequate community-based support services available to Derek. She also claims that MSH failed to sufficiently assess Derek or to adequately stabilize his psychotropic medications prior to discharge.

¶30 In addition, Fran argues that the District Court erred in determining that James was not a foreseeable plaintiff and that the State did not owe James a duty. She contends that because James was living in Derek's apartment with Derek, James was a reasonably foreseeable plaintiff.

¶31 Even assuming, arguendo, that Derek was not stabilized and that § 53-21-601(2)(c), MCA, was violated, that would not abrogate the State's immunity under § 27-1-1103, MCA, because § 27-1-1102, MCA, requires proof that Derek made "an actual threat of physical violence by specific means against a clearly identified or reasonably identifiable victim." This exception to liability is extremely narrow. It requires proof of (1) an actual threat of physical violence, (2) by specific means, and (3) against a clearly identified or reasonably identifiable victim. In other words, this

11

exception cannot hinge on "stabilization" or the breach of some other statute. In like fashion, Fran's argument that the District Court erred in determining that James was not a foreseeable plaintiff and that the State did not owe James a duty, also fails. Again, there was no proof offered that Derek made an actual threat of physical violence by specific means against James. Accordingly, inasmuch as Fran did not offer proof that Derek engaged in conduct which triggered the specific statutory exception of § 27-1-1102, MCA, the State is entitled to immunity from suit under § 27-1-1103, MCA.

## CONCLUSION

¶32 Based on the foregoing, we hold that the District Court did not err in granting the State's Motion for Summary Judgment.

¶33 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE