FILED

06/13/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0196

DA 21-0196

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 109

STATE OF MONTANA,

Plaintiff and Appellee,

v.

DANE ANTHONY GIBSON,

Defendant and Appellant.

APPEAL FROM:     District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DC 19-69
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Michael P. Dougherty, Assistant Attorney General, Helena, Montana

Eileen Joyce, Butte-Silver Bow County Attorney, Michael W. Clague, Deputy County Attorney, Butte, Montana

Submitted on Briefs:  March 29, 2023

Decided:  June 13, 2023

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Dane Gibson appeals the Second Judicial District Court's denial of his motion to dismiss. Gibson argues that it was "unjust" to resume his criminal proceedings because it took too long for him to regain fitness to stand trial. Upon review of the record, we conclude that the District Court complied with all statutory requirements and did not abuse its discretion when it resumed Gibson's criminal proceedings after he became fit to stand trial. We affirm Gibson's conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    In January 2019, Gibson boarded a bus from Missoula to Butte. When the bus reached Butte, Gibson demanded that the driver take him to the "courthouse," declaring that he had a bomb and a gun. The driver took the bus to the Butte Civic Center, telling Gibson that it was the courthouse. During the ensuing eight-hour standoff with law enforcement, Gibson held the one other bus passenger hostage. The passenger managed to escape and law enforcement eventually took Gibson into custody.

¶3    The State charged Gibson with aggravated kidnapping and assault with a weapon on March 6, 2019. Two weeks later, Gibson's counsel moved for Gibson to be evaluated for fitness to stand trial. The District Court ordered that Gibson be examined by a mental health professional within 60 days. At his arraignment eight days later, Gibson requested that he be permitted to represent himself to prove his competency. The court declined to review Gibson's request at that time, letting counsel enter pleas of not guilty.

¶4    On April 25, 2019, Gibson arrived at the Montana State Hospital and was placed under the supervision of the Forensic Mental Health Facility. On June 24, 2019, 60 days after Gibson's arrival at the Forensic Mental Health Facility, Dr. Virginia Hill submitted to the District Court her findings on his ability to stand trial. Dr. Hill diagnosed Gibson with persecutory delusional disorder, an illness that she believed would hinder his ability to provide relevant testimony or otherwise assist in his defense. Dr. Hill asked the court to extend Gibson's evaluation period for up to six months because she believed he could regain fitness through participation in a treatment plan. Based on Dr. Hill's evaluation, the District Court issued an order on August 13, 2019, stating that Gibson was unfit to proceed and suspending the criminal proceedings against him. The court extended Gibson's custody again on November 14, 2019, based on further evidence presented by Dr. Hill.

¶5    On December 11, 2019, after holding a hearing on the matter, the District Court permitted Dr. Hill to medicate Gibson forcibly because he refused to take the medication that was prescribed through his treatment plan, preventing Gibson from regaining fitness to stand trial. On April 23, 2020, after Gibson had been on the medication, the court received notice from Dr. Hill that he was fit to proceed. Finding Gibson fit, the court entered an order on June 10, 2020, setting trial for November 2020, continuing Gibson's commitment until then. In August 2020, Gibson's counsel moved to dismiss Gibson's criminal charges pursuant to § 46-14-222, MCA, arguing that "so much time ha[d] elapsed" that it would be unjust to proceed with the trial. The court heard argument on the motion and denied it.

3

¶6 On December 15, 2020, Gibson pleaded guilty to assault with a weapon, and the parties agreed to recommend that Gibson be committed to the Department of Public Health and Human Services (DPHHS) for the duration of his sentence. On February 17, 2021, the court sentenced Gibson to twenty years in the custody of DPHHS with ten years suspended. Gibson appeals the District Court's denial of his motion to dismiss for the unjust resumption of his criminal proceedings.

## STANDARD OF REVIEW

¶7 When reviewing a court's discretionary rulings, we review for abuse of discretion, "considering whether the district court's decision is arbitrary and without conscientious judgment or if it 'so exceed[s] the bounds of reason as to work a substantial injustice.'" *State v. Mosby*, 2022 MT 5, ¶ 12, 407 Mont. 143, 502 P.3d 116 (quoting *State v. Giddings*, 2009 MT 61, ¶ 42, 349 Mont. 347, 208 P.3d 363).

## DISCUSSION

¶8 Gibson argues that it was unjust for the District Court to resume his criminal proceedings due to the lengthy period between his arrest and the date he regained fitness to stand trial. Gibson maintains that he was subject to an "indeterminate commitment" because he was held at the Forensic Mental Health Facility without the opportunity for release through bail and without the protections of a civil commitment, only to be sentenced to DPHHS after regaining fitness. Gibson urges this Court to consider the "unjust standard" found in § 46-14-222, MCA, in the context of *Jackson v. Indiana*, 406 U.S. 715, 92 S. Ct. 1845 (1972), arguing that to comply with the constitutionally guaranteed rights

4

of equal protection and due process, commitments must "bear some reasonable relation to the purpose for which the state committed the individual." Gibson argues that in his case, the pre-trial commitment was not reasonably related to preparing him to stand trial because he was always going to be sentenced to DPHHS for not appreciating the criminality of his actions.

¶9 The State responds that the District Court did not abuse its discretion under § 46-14-222, MCA, because resuming Gibson's criminal proceedings was not unjust. It points to the plain language of the statute, arguing that the time between Gibson's commitment and when he regained fitness to proceed was reasonable considering the circumstances, particularly Gibson's refusal to cooperate with his treatment plan. The State maintains that this Court should not review any constitutional issues Gibson raises because he did not raise a substantive due process argument before the District Court.

¶10 Sections 46-14-221 and -222, MCA, prescribe the process a district court must follow when a defendant's fitness to proceed with trial is in question. Consistent with principles of statutory construction, we read the two statutes together. *Mosby*, ¶ 23. Section 46-14-221, MCA, sets forth the procedure for determining whether a defendant is fit to stand trial and the options that follow that determination. Section 46-14-222, MCA, "create[s] a mechanism to resume a criminal case if the defendant regains fitness." *Mosby*, ¶ 25.

¶11 If the court determines that a defendant is unfit to proceed, it must suspend criminal proceedings and commit the defendant to the custody of DPHHS "for so long as the

unfitness endures or until disposition of the defendant" as further prescribed by the statute. Section 46-14-221(2)(a), MCA. The facility in which the defendant is placed must "develop an individualized treatment plan to assist the defendant to gain fitness to proceed[,]" which may include "reasonable and appropriate medication." Section 46-14-221(2)(b), MCA. As the District Court did here, the court may order compliance with the medication prescribed in the treatment plan. Section 46-14-221(2)(b), MCA.

¶12 The court must review the defendant's fitness within 90 days of commitment. Section 46-14-221(3)(a), MCA. At that point, if the defendant is still unfit and the court finds that "it does not appear that the defendant will become fit to proceed within the reasonably foreseeable future," the court must dismiss the charges against the defendant. Section 46-14-221(3)(a), MCA. We have noted that defendants should not "have their commitments re-extended indefinitely on the slim chance that future treatment may help them to regain fitness," but a court acts appropriately in extending the commitment when there is evidence to support the prospect that a defendant will regain fitness "within the reasonably foreseeable future." *State v. Yarnell*, 2004 MT 333, ¶¶ 31-33, 324 Mont. 164, 102 P.3d 34.

¶13 Section 46-14-222, MCA, requires a court to resume proceedings once the defendant regains fitness. The statute allows the court, however, the discretion to dismiss charges against the defendant or—subject to appropriate process—to order the defendant civilly committed if "the court is of the view that so much time has elapsed since the commitment of the defendant that it would be unjust to resume the criminal proceedings[.]"

Section 46-14-222, MCA.  We recognized in *Mosby*, ¶ 30, that the plain language of § 46-14-222, MCA, grants courts discretion to resume the criminal proceedings.  On the other hand, § 46-14-221, MCA, "requires the substitution of civil commitment proceedings if the defendant's unfitness stands to persist indefinitely[.]"  *Mosby*, ¶ 23.

¶14    Gibson does not dispute the District Court's compliance with the procedural requirements of § 46-14-221, MCA.  He argues only that it was unjust, within the meaning of § 46-14-222, MCA, to resume his criminal proceedings because too much time had passed from his arrest to when he regained fitness.  We consider, therefore, whether the District Court acted within the discretion afforded by statute when it denied Gibson's motion to dismiss and chose to resume the criminal proceedings against him.

¶15    At the hearing on his motion to dismiss, on October 14, 2020, Gibson argued that it would be unjust to subject him to trial after 620 days of confinement (which included time he spent in jail before his commitment to the mental health facility).  The State urged the District Court to apply a speedy trial analysis to the issue, noting that this Court has not defined "unjust" in the context of § 46-14-222, MCA.  The State acknowledged that Gibson was not raising a speedy trial claim, but argued a speedy trial analysis provided the best framework without a more concrete definition of unjust.  Gibson declined to pursue a speedy trial claim.  The State accurately points out that this Court has not directed district courts how to determine when it would be unjust to resume proceedings when a defendant regains fitness.  As the reviewing court, we instead consider whether the court acted

without "conscientious judgment," thus abusing its discretion under § 46-14-222, MCA. *Mosby*, ¶ 34.

¶16     In *Mosby*, ¶ 37, we held that the court failed "to examine the fairness" of reinstating criminal charges against a defendant twelve years after he was confined to a mental health facility. When Mosby was first charged in 2005, an expert found that he had a developmental disability, impaired intellectual function, and an inability to comprehend the proceedings against him; the expert did not believe Mosby's ability to proceed with trial would ever significantly improve. *Mosby*, ¶¶ 4-5. Based on these findings, the court found Mosby unfit to proceed, suspending the criminal proceedings against him. *Mosby*, ¶ 5. After a second expert agreed with the findings, the court dismissed Mosby's criminal case, and the State opened a civil case for involuntary commitment. *Mosby*, ¶ 6. In 2017, when the State sought to extend his commitment, Mosby provided evidence that his diagnosis of a developmental disability might not be "bona fide." *Mosby*, ¶ 9. The State followed with a motion on the dismissed charge from 2005, pointing to Mosby's new evidence as a reason to reassess Mosby's fitness to proceed with a criminal trial. *Mosby*, ¶ 10. The District Court reinstated Mosby's 2005 criminal case in 2018 and continued his civil commitment case. *Mosby*, ¶ 11. It found Mosby fit to proceed to trial, and Mosby eventually pleaded guilty to felony sexual assault but appealed the reinstatement. *Mosby*, ¶ 11.

¶17     We held that the district court abused its discretion when it reinstated Mosby's criminal proceedings. *Mosby*, ¶ 37. We noted that because it conflated Mosby's fitness to

8

proceed with reasons to keep Mosby committed to a mental health facility, the court gave "insufficient consideration [to] whether renewed prosecution would be unjust to Mosby." *Mosby*, ¶ 34. Though it found that Mosby still posed a risk to himself and the community justifying his continued commitment, the district court inconsistently found sufficient grounds to resume criminal charges. *Mosby*, ¶ 35. We stressed "the passage of time through Mosby's chronicle as a whole," as § 46-14-222's "so much time" language suggested, and noted that "trial after such long-term institutionalization is exactly the situation that the Commission Comments to Section 222 suggested might seem unjust." *Mosby*, ¶ 36 (citing § 46-14-222, MCA, *Annotations*, Comm'rs Note (1992)).

¶18 Contrary to the situation in *Mosby*, the District Court gave serious consideration to Gibson's circumstances and determined that the delay was not too long to resume prosecution. It is appropriate to continue a defendant's commitment when there is evidence that the defendant will become fit to proceed after treatment. *See Yarnall*, ¶¶ 31-33; *contra State v. Meeks*, 2002 MT 246, ¶¶ 22-24, 312 Mont. 126, 58 P.3d 167 (a district court had to dismiss criminal charges when, after 90 days, a defendant was declared unfit without evidence to support regaining fitness).[1] The District Court heard evidence from Dr. Hill that Gibson likely would regain fitness for trial within a reasonable time.[2] A significant

---

[1] In *State v. Rich*, we held that this 90-day requirement is not a jurisdictional bar to district courts. 2022 MT 66, ¶ 16, 408 Mont. 178, 507 P.3d 176. Defendants may waive the 90-day procedural deadline.

[2] The Dissent interprets Dr. Hill's testimony to suggest uncertainty about the likelihood that Gibson would regain fitness within a reasonable time. Dissent, ¶¶ 25, 27. In her June report, Dr. Hill requested a six-month extension, believing there was a "substantial likelihood" that Gibson would

contributing factor was the time it took to administer the medication Gibson needed to regain fitness. Once the court permitted involuntary administration, Gibson regained fitness to proceed with trial within months of taking the medication, as Dr. Hill predicted.

¶19 Gibson emphasizes the 620 days he had spent in the State's custody at the time he filed his motion to dismiss. But the relevant period under §§ 46-14-221 and -222, MCA, is that expended in the determination of fitness. Gibson was in the Forensic Mental Health Facility for just under a year when he achieved fitness to stand trial. Gibson does not argue that his case should be reversed for violation of the time limits or procedures in § 46-14-221, MCA. In his brief before this Court, Gibson notes that his "attorney waived further review about [his] fitness" at the end of the § 46-14-221, MCA, 90-day review period, and "none of [the] delay" between Dr. Hill's evaluation to the District Court and the set hearing on the matter "would count against the limited protections in § 46-14-221, MCA." Whether the time was "unjust," therefore, is a discretionary determination for the District Court under § 46-14-222, MCA. [3] To the extent Gibson wished to contest other

_____

regain adjudicatory competency in this time with the aid of medication. Before the District Court, Dr. Hill testified that Gibson had been struggling with the symptoms of his delusional disorder for one to two years. She estimated six months with medication before any "significant change" in his symptoms allowed him to regain fitness for trial. Dr. Hill noted that, though Gibson may never fully rid himself of his delusions—the Forensic Mental Health Facility is "rarely" able to "eliminate symptoms"—the medication would help Gibson "consider all his options in a rational manner." In response to cross-examination about what would happen if Gibson did not regain fitness in six months, Dr. Hill also noted that in prior cases the court had granted her up to two years to help defendants regain fitness depending on the nature of the crime. Dr. Hill did not, however, testify that she suspected it would take Gibson this long to regain fitness. Nor did Dr. Hill inform the court that she believed Gibson was unlikely to regain fitness if he were medicated.

[3] The Dissent stresses that the "significant District Court and [MSH] failure to strictly comply" with the procedures found in § 46-14-221, MCA, unfairly added time to Gibson's commitment.

delays in the case, he could have done so through a speedy trial claim. *See State v. Allery*, 2023 MT 25, 411 Mont. 219, 523 P.3d 1088 (holding that the over two-year institutional delay and resulting prejudice the defendant experienced awaiting evaluation for his fitness to stand trial and further decompensating due to premature reincarceration while awaiting trial warranted dismissal for violation of the defendant's speedy trial rights).[4] Indeed, § 46-14-221(4), MCA, expressly preserves a defendant's right to present "any legal objection to the prosecution that is susceptible to fair determination prior to trial and that is made without the personal participation of the defendant[,]" even during a time the defendant is unfit to proceed. Notwithstanding the State's comments drawing the speedy trial analysis to the court's attention, however, Gibson's counsel chose not to raise such a claim.

¶20 We conclude that the District Court did not abandon "conscientious judgment" when it determined that it was appropriate to resume the criminal proceedings after Gibson

---

*Dissent*, ¶ 28. Though the record reflects delays between the evaluation submitted by Dr. Hill on June 24, 2019, the court's order on Gibson's fitness entered on August 13, 2019, and an eventual hearing on December 11, 2019, the briefings do not offer explanations for the delays, and Gibson does not argue that these delays warrant reversal under § 46-14-221, MCA. Gibson also does not raise an ineffective assistance of counsel claim for his attorney's decision to waive review of his fitness at the end of the 90-day period prescribed in § 46-14-221(3), MCA. We consider Gibson's case as he argues it, under § 46-14-222, MCA, reviewing for abuse of discretion the District Court's determination that the delay was not "unjust."

[4] *Allery* reaffirmed that, in a speedy trial analysis, "a defendant who requests evaluation is responsible for the time spent actively completing and reviewing the evaluation." *Allery*, ¶ 22 (citations omitted). But we clarified that "the State is responsible for delay in commencing the evaluation or delivering its results." *Allery*, ¶ 22. We also noted that the time spent on a defendant receiving treatment to regain fitness is not time that is attributable to either party under a speedy trial analysis. *Allery*, ¶ 25.

regained fitness on April 23, 2020. It considered the circumstances of Gibson's continued commitment, finding no issue with the evidence presented supporting his fitness for trial and no "injustice" imposed on Gibson by proceeding. Gibson has not demonstrated an abuse of the court's discretion in reaching that determination.

¶21 Gibson finally argues that his was the sort of "indeterminate commitment" that *Jackson v. Indiana* rejected on a constitutional basis because he was—from the start—assessed as unable to appreciate the criminality of his actions, meaning he was always going to end up fulfilling his sentence at DPHHS rather than the Montana State Prison if convicted. He maintains that this implicated his due process rights because he was made fit for trial "for no other purpose but to return to treatment."

¶22 The State correctly points out that Gibson did not preserve a constitutional challenge for appeal. *See State v. Ingram*, 2020 MT 327, ¶ 10, 402 Mont. 374, 478 P.3d 799 (citation omitted) (generally, reserving an issue for appeal necessitates raising it before the trial court). Nor does Gibson request that we review any unpreserved constitutional argument for plain error. *See State v. Barrows*, 2018 MT 204, ¶ 8, 392 Mont. 358, 424 P.3d 612 (unpreserved issues may be reviewed under plain error when there is an allegation of a violation of a fundamental constitutional right). We decline therefore to consider Gibson's "inevitable" sentence to DPHHS under a substantive due process analysis. *See State v. Villanueva*, 2021 MT 277, ¶ 34, 406 Mont. 149, 497 P.3d 586 (citation omitted) ("[T]his Court is not obligated to develop arguments on behalf of an appellant who fails to do so."). We observe, however, that the ability to appreciate the criminality of one's actions is a

question appropriate at the time of sentencing; it is not an inquiry that affects a defendant's fitness to stand trial in Montana. *See State v. Korell*, 213 Mont. 316, 322-23, 690 P.2d 992, 996 (1984). That Dr. Hill determined Gibson incapable of appreciating the criminality of his actions did not prevent the State from prosecuting him. *See Korell*, 213 Mont. at 322-333, 690 P.2d at 996. It also does not reflect an abuse of the District Court's discretion when it decided to proceed with Gibson's trial once he regained fitness.

## CONCLUSION

¶23 The District Court did not abuse its discretion when it resumed Gibson's criminal proceedings. We affirm.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Justice Dirk Sandefur dissenting.

¶24 I dissent. From the date of the charged and ultimately-convicted criminal offense in January 2019 (assault with a weapon based on a delusional hijacking of a public bus and holding of the other passenger hostage under threat of violence), until the District Court declared him fit to proceed in his criminal prosecution in April 2020, the undisputedly delusional and mentally ill Gibson was continuously incarcerated for almost fifteen months, to wit:

13

(1)      three months in a county jail (January to April) before the State transported him to the Montana State Hospital pursuant to §§ 46-14-202(2), -206, and -221(1), MCA, for court-ordered psychiatric evaluation for minimum fitness to proceed, ability to understand the proceedings and assist in his defense, and whether any diagnosed mental illness precluded him from appreciating the criminality of his conduct, or conforming his behavior to the law, at the time of the charged offense;

(2)      three and a half months in the State Hospital (April to mid-August), for evaluation and the resulting report that he was, and had been, afflicted with a delusional mental illness (persecutory delusional disorder) and was thus both unfit to proceed and earlier unable to appreciate the criminality of the charged conduct, or conform his behavior to the requirements of the law; and

(3)      another eight months in the State Hospital (mid-August 2019 to April 2020) for mental rehabilitation pursuant to § 46-14-221(2)-(3), MCA, upon adjudication that he was unfit to proceed due to a mental disorder, including four months of involuntary medication (mid-December 2019 to April 2020).[1]

¶25    In the State Hospital's initial June 2019 evaluation report, Dr. Virginia Hill concluded, *inter alia*, that "Gibson is not believed fit to proceed . . . because his distorted thinking will prevent him from testifying relevantly, and from responding in a rational and realistic manner when evidence is presented against him. . . . [T]here is also evidence that his delusional thinking compromised his capacity to appreciate the criminality of his behavior or to conform . . . [it] to the requirement of the law at the time of [the alleged] crime. . . . He will likely remain unfit to proceed into the foreseeable future unless compelled to cooperate with his Treatment Plan," including contemplated anti-psychotic

---

[1] Upon finding in late April 2020 that Gibson was finally fit to proceed in his criminal prosecution, and proceedings resumed pursuant to § 46-14-222, MCA, the District Court ordered that he continue in the custody of the State Hospital, where he remained through disposition of the case in February 2021, and post-sentencing for at least the next eight years after credit for time-served pre-sentence.

medication. As noted by the Majority, Dr. Hill did opine that there was a "substantial likelihood" that Gibson could become fit to proceed within six months, but only with compelled anti-psychotic medication, a measure not initially authorized by the District Court.

¶26 At the December 2019 hearing on the State Hospital's request for court authorization to administer involuntary medication, however, Dr. Hill did not testify with any similar degree of certainty, as characterized by the Majority, that "Gibson likely would regain fitness for trial within a reasonable time." *See* Opinion, ¶ 18. She noted that he had refused to take medication up to that point, and estimated that, at best, it would be "*at least* six months" before any "significant change" in his mental state might occur— treatment "just takes time." (Emphasis added.) Asked whether the contemplated anti-psychotic medication "would take care of his delusions" if given "enough time," Dr. Hill answered, "I don't know [that] it will take care of his delusions. It will help him to . . . consider all his options in a rational manner," but "[w]e rarely eliminate psychotic symptoms." When asked, "so what happens after six months if he still has these delusions," she responded:

> we often request additional time[,] [a]nd [even] that isn't always successful. The [c]ourt decides if the alleged crime is serious enough. . . . [W]hen it gets into these violent felonies, I've had up to two years to get people fit. But it is certainly a decision by the [c]ourt[,] [a]nd we just work as best we can with the medications. I wish we had better medicines. I wish they worked quicker.

¶27 On or about April 23, 2020, almost fifteen months after his arrest, and after almost a year of continued incarceration in a state mental institution, Dr. Hill reported that, based

15

on the administration of court-authorized involuntary medication since mid-December 2019, Gibson was minimally mentally fit to proceed in the suspended criminal proceedings. The District Court accordingly ordered resumption of criminal proceedings and reset trial for November 2020. However, in August 2020, Gibson moved through counsel for dismissal of the prosecution pursuant to § 46-14-222, MCA (discretionary dismissal of resumed criminal proceeding upon court determination that elapsed delay would render resumption "unjust" under the circumstances). In advance of the scheduled trial, and following the District Court's denial of his motion to dismiss, Gibson later pled guilty under a plea agreement in December 2020. In accordance with the plea agreement recommendation, the District Court later sentenced him to a 20-year term of commitment, with 10 years suspended, to the Montana Department of Public Health and Human Services "for custody, care, and [psychiatric] treatment" as provided in §§ 46-14-311(1) and -312(2), MCA.

¶28    Despite the Majority's characterization of the procedural history of this case in the light most favorable to the State, Gibson's incarceration and related State Hospital commitment was beset by significant District Court and State Hospital failure to strictly comply with the mental fitness evaluation, reviews, hearings, and adjudication timelines specified by § 46-14-221(3), MCA. Even over four months after expiration of the initial 90-day evaluation deadline, Dr. Hill acknowledged in December 2019 that it could take up to two years for Gibson to regain minimum fitness to proceed and, even if so, he would likely remain psychotic and delusional, which is essentially what happened, as manifest by his ultimate long-term mental illness incarceration for custody and psychiatric treatment

16

pursuant to §§ 46-14-311(1) and -312(2), MCA. Despite the District Court's finding of no case-related prejudice resulting from the accumulated delay from the date of arrest through the rescheduled November 2020 trial on resumption of criminal proceedings, Gibson was prejudicially incarcerated in jail and a state mental hospital for almost fifteen months in a delusional state of mind, without bail or affordable bail, even before his purported newfound or "regained" minimum mental fitness to proceed.

¶29 Based on my 14-year tenure as a district judge in one of Montana's busiest judicial districts, and an additional six-plus years as a member of this Court, I am well aware of the practical realities of the manifest, and not uncommon, institutional delay that besets and afflicts defendants charged with very serious crimes, but who were unable to appreciate the criminality of their conduct or conform their conduct to the requirements of the law due to serious mental illness, who are then patently mentally unfit to proceed and meaningfully assist in their defense, and who, after significant continued "rehabilitative" incarceration in a state mental hospital, more often than not remain unable to meaningfully understand and assist in their plight regardless of contrary State certification of their newfound or "regained" minimal mental fitness to proceed. If that is all that occurred here, and the record manifested a reasonably diligent attempt by the State, State Hospital, and District Court to strictly comply with the statutory deadlines and procedure clearly specified in Title 46, chapter 14, MCA, I would have to grudgingly join the Majority and affirm.

¶30 Particularly galling and outrageous in this case, however, is the Majority's irresponsible and illogical attribution and justification for the significant pretrial delay in this case to the not-too-surprising inability or unwillingness of a seriously mentally ill and

17

delusional defendant to comply with, much less fully understand and consent to, the involuntary "rehabilitation" regimen figuratively, if not literally, forced down his throat. Even the law recognizes the obvious: the "unwillingness" of a mentally ill criminal defendant to participate in mental examination and treatment at the State Hospital may be "the result of the [subject] mental disease or disorder" with which he or she is afflicted. *See* § 46-14-206(2), MCA. Likewise, the Majority's cavalier assertion that the seriously mentally ill and delusional Gibson could have at any time asserted a procedural objection through counsel, and/or availed himself of a "speedy trial claim." Opinion, ¶ 19. Seriously mentally ill defendants, particularly delusional defendants, are more often than not cognitively unable or ill-equipped to prompt defensive action through counsel and, in a humane society, should not be penalized or prejudiced when counsel fails or is unable to act effectively on behalf of his or her cognitively impaired mentally ill client, with the client's informed consent.[2] Moreover, neither the State, nor the Majority, even attempt to assert that the statutory alternative to delay-based dismissal under § 46-14-222, MCA (civil commitment pursuant to Title 53, chapter 21, MCA), would be unjust under the totality of

---

[2] Here, in disregard of the 90-day review of the status of Gibson's unfitness to proceed, and corresponding judicial determination and action, required by § 46-14-221(3)(a)-(b), MCA (requiring 90-day unfitness review and dismissal for civil commitment proceedings under Title 53, chapter 21, MCA, if "defendant is [then] still unfit to proceed" and it "does not appear that [he] will become fit to proceed within the reasonably foreseeable future"), defense counsel unilaterally stipulated with the State, without the informed consent of his still delusional and unfit client, that Gibson would remain incarcerated at the State Hospital for yet another month past the 90-day review deadline in November 2019, until "the [c]ourt can issue an order requiring [his] further placement at [the] State Hospital" following a mid-December status hearing. *See* Stipulation To Motion Placement At Warm Springs State Hospital, *State v. Gibson*, No. DC-19-69 (Mont. Second Judicial Dist. Nov. 13, 2019).

the circumstances of this case. Under these circumstances, I would hold that the District Court abused its discretion in denying Gibson's motion to dismiss under § 46-14-222, MCA (discretionary dismissal of resumed criminal proceeding upon court determination that the elapsed delay would render resumption of the suspended criminal case "unjust" under the circumstances). I dissent.

/S/ DIRK M. SANDEFUR

Justices Laurie McKinnon and Ingrid Gustafson join in the dissenting Opinion of Justice Sandefur.

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON